AMERICAN CIVIL LIBERTIES
UNION and Larry Schack,
Plaintiffs–Appellants,

v.

THE FLORIDA BAR and The Florida
Judicial Qualifications Commission,
Defendants–Appellees.

No. 91–4138.

United States Court of Appeals,
Eleventh Circuit.

Sept. 2, 1993.

James K. Green, W. Palm Beach, FL, Mike Masinter, Law Center, Fort Lauderdale, FL, Jerry G. Traynham, Tallahassee, FL, for plaintiffs-appellants.

George L. Waas, Florida Dept. of Legal Affairs, Barry Richard, Tallahassee, FL, for defendants-appellees.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES *, Senior Circuit Judges.

KRAVITCH, Circuit Judge:

Larry Schack ("Schack") and the American Civil Liberties Union ("ACLU") appeal the decision of the district court dismissing their case against the Florida Bar ("Bar") and the Judicial Qualifications Commission ("JQC") on the ground that the claim is moot. In addition, on appeal, both the Bar and the JQC argue that this court does not have jurisdiction to hear the case as no case or controversy exists between the parties. We disagree with both the district court's ruling and defendants' justiciability arguments. Accordingly, we reverse and remand.

I.

At the time this suit was filed, Larry Schack was a Florida lawyer seeking election

* Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

to the Florida Circuit Court. Today, Larry Schack is a sitting state circuit judge and expects to run for re-election in 1996.[1] Schack, along with the ACLU, is challenging a provision of the Florida Code of Judicial Conduct that requires candidates for judicial office to "maintain the dignity appropriate to judicial office." Florida Code of Judicial Conduct, Canon 7(B)(1)(a) (1992).

The JQC is charged with enforcing the Code of Judicial Conduct by investigating and recommending to the Supreme Court of Florida any judge who should be removed from office or otherwise sanctioned for a breach of the Code's mandates. *See* Fla. Const. art. V, § 12. The Bar organizes, licenses and disciplines all persons admitted to practice law in Florida. The Bar was established by the Supreme Court of Florida pursuant to the Court's state constitutional powers and is empowered to enforce the Rules Regulating the Florida Bar. *See* Fla. Const. art. V, § 15. As a member of the Florida Bar seeking judicial election at the time this suit was filed, Schack was subject to Rule 4–8.2(b) which provides, "A lawyer who is a candidate for judicial office shall comply with the applicable provisions of Florida's Code of Judicial Conduct." Sup.Ct.Fla., Rules Regulating the Florida Bar, Rule 4–8.2(b) (1992).

As a candidate for judicial office, Schack wanted to speak publicly about truthful information regarding his opponent, the incumbent circuit judge. This information included that the opponent had been convicted of leaving the scene of an accident, that he had been the subject of three FBI investigations, and that he had appointed, in his former capacity as state attorney, a chief investigator who was later convicted of assisting a drug smuggler. Schack was concerned, however, that his proposed speech might violate Canon 7(B)(1)(a), as it had been interpreted

and enforced by the JQC and the Supreme Court of Florida. He was aware that other candidates for judicial office had run afoul of the JQC by engaging in conduct that, in the opinion of the JQC and the Supreme Court of Florida, did not "maintain the dignity appropriate to judicial office." *See In re Inquiry Concerning a Judge, Re: Kay,* 508 So.2d 329 (Fla.1987) (sitting state judge publicly reprimanded for funding and mailing sample ballots that closely resembled official ballots, giving the appearance that Republican and Democratic Parties endorsed candidates in non-partisan race); [2] *In re Inquiry Concerning a Judge, Re: Pratt,* 508 So.2d 8 (Fla. 1987) (same).

In order to avoid any action by the JQC, Schack sought an advisory opinion from the Committee on Standards of Conduct Governing Judges ("Committee on Standards") as to whether his proposed speech would violate Canon 7(B)(1)(a). The Committee on Standards was established by the Supreme Court of Florida pursuant to the Court's constitutional powers, *see* Fla. Const. art. V, §§ 2(b) & 15, for the sole purpose of rendering "written advisory opinions to inquiring judges concerning the propriety of contemplated judicial or non-judicial conduct." *Petition of Comm. on Standards of Conduct for Judges,* 327 So.2d 5 (Fla.1976).[3]

At approximately the same time that Schack was inquiring of the propriety of his proposed campaign conduct, another candidate for judicial office, Charles Horn, had filed suit against the Bar and the JQC to enjoin the operation and enforcement of Canon 7(B)(1)(c). This provision of the Code of Judicial Conduct provides in part:

> A candidate, including an incumbent judge, for a judicial office ... should not ... announce his views on disputed legal or political issues....

---

1. Circuit judges are elected for terms of six years. Fla. Const. art. V, § 10(b).

2. The Court cited at length from the recommendations of the JQC which stated in part:

 [T]he Commission does bring to this Court's attention the fact that it is increasingly receiving major complaints in non-partisan judicial elections, and recommends that in the Court's opinion herein, candidates for future non-par-

 tisan elections be warned as to the drastic consequences which might be imposed by reason of such violations.

 *In re Kay,* 508 So.2d at 330.

3. Although Schack was not a judge at the time he sought the advisory opinion, he was bound by Rule 4–8.2(b) of the Rules Regulating the Florida Bar, which required him, as a judicial candidate, to comply with the Code of Judicial Conduct.

Finding that Horn had established the prerequisites for preliminary injunctive relief, the district court in that case enjoined the operation of Canon 7(B)(1)(c) as against Horn, holding that the canon violated Horn's rights under the First and Fourteenth Amendments to the U.S. Constitution. *See American Civil Liberties Union, Inc. v. The Florida Bar,* 744 F.Supp. 1094 (N.D.Fla. 1990).[4]

After the Committee on Standards informed Schack that his proposed campaign speech *would* violate Canon 7(B)(1)(a), and after the district court in the *Horn* case had enjoined the Bar and the JQC from enforcing Canon 7(B)(1)(c), Schack asked the JQC whether it would enforce Canon 7(B)(1)(a) against him. The JQC refused to render an advisory opinion.[5] Thus, with two weeks remaining until the election, Schack was faced with the choice of risking possible disciplinary action by the Bar and the JQC, or self-censoring his proposed campaign speech, despite his belief that this speech was protected under the First Amendment. Instead, Schack, along with the ACLU, sued the Bar and the JQC, seeking a declaratory judgment that Canon 7(B)(1)(a) is unconstitutional on its face and as applied to Schack, and asking that the Bar and the JQC be enjoined from enforcing it.

## II.

In response to Schack's and the ACLU's complaint and motion for declaratory and injunctive relief, the Bar argued that its reading of Canon 7(B)(1)(a) would not prohibit Schack from making his proposed campaign speech and stated that it had no intention to enforce Canon 7(B)(1)(a) (through Rule 4–8.2(b) of the Rules Regulating the Florida Bar) against Schack. Thus, the Bar argued, no preliminary injunction was necessary. The Bar did admit, however, that be-

cause the Committee on Standards had issued an adverse advisory opinion, a declaratory judgment would be appropriate.[6] On that issue, the Bar maintained that Canon 7(B)(1)(a) is constitutional. In its answer, the JQC also asserted that Canon 7(B)(1)(a) could not be used to prevent Schack from following through on his proposed campaign speech.[7]

After hearing argument, the district court denied the motion for a preliminary injunction, noting that neither the Bar nor the JQC had any intention of enforcing Canon 7(B)(1)(a) against Schack. The court also asked that Schack and the ACLU brief the court as to whether any case or controversy remained to be decided.[8] While the motions on case or controversy were pending, Schack was elected Circuit Judge for Martin County, Florida. Without formally ruling on whether a case or controversy existed between the parties, the district court then asked the parties to address the issue of whether Schack's election had rendered the controversy moot. In its final order, the district court concluded that the case had become moot and did not involve the type of harm that was capable of repetition yet evading review.

On appeal, the Bar and the JQC, in addition to arguing that the district court's decision on mootness grounds should be upheld, continue to assert that this court does not have jurisdiction over the appeal as no case or controversy exists between them and appellants as required by Article III of the United States Constitution. Therefore, we will address first whether an actual dispute exists between the parties before turning our attention to whether or not appellants' claim is moot.

## III.

Questions concerning the justiciability of a case traditionally take a number of forms:

4. The district court entered a permanent injunction of the provision of Canon 7(B)(1)(c) prohibiting the discussion of disputed legal and political issues. *American Civil Liberties Union, Inc. et al. v. The Florida Bar et al.,* No. 90–40122–WS (N.D.Fla. May 21, 1991).

5. Schack never sought an opinion from the Bar as to whether it would enforce Rule 4–8.2(b) against him for his proposed campaign speech.

6. *See* R.1–14 at 2.

7. *See* R.1–15 at 2.

8. The court also denied Schack's motion to consolidate his action with Horn's action challenging Canon 7(B)(1)(c).

Does this party have standing? Is the cause of action ripe? Is it moot? Is there a real dispute between the parties constituting a case or controversy? Although each of these inquiries has spawned its own jurisprudence, the questions often are interconnected, particularly when, as here, the nature of the controversy is an anticipatory challenge through an action for a declaratory judgment.

The case or controversy requirement must be met throughout the entirety of the proceedings. In this case, there are three critical points at which the case or controversy requirement is called into question: (1) Before Schack and the ACLU filed suit, had they suffered an injury as a result of defendants' actions? (2) After the suit was filed, and after the Bar and the JQC acquiesced in Schack's position, was there still a concrete dispute between the parties? (3) If so, was that real and substantive controversy mooted by the election of Schack to the circuit court bench? Although questions (2) and (3) both appear to ask whether the controversy is moot, they demand different analyses. To answer question (2), we must determine whether the defendants' in-court statements ameliorated plaintiffs' injury. Question (3), on the other hand, involves an intervening event, beyond the control of both parties, and the effects that event has on the nature of the case or controversy. Thus, despite the fact that the election is long over, we must analyze question (2) from a point in time before the election to determine whether Schack and the ACLU continued to suffer an injury during the pendency of the lawsuit. Only if they did sustain an injury before the election do we concern ourselves with whether the election mooted the controversy.

### A.

The Bar contends that it is not a properly named defendant in this action because it has no enforcement authority under the Code of Judicial Conduct. This argument fails. The propriety of the Bar as a defendant in this action derives from the provisions of the Florida State Constitution granting the Supreme Court of Florida exclusive jurisdiction over the regulation of judges and lawyers. See Fla. Const. art. V, § 15. The Court subsequently delegated that authority over lawyers to the State Bar of Florida. See Rules Regulating the Florida Bar, 494 So.2d 977 (Fla.1986). The Bar has exclusive authority to make recommendations to the Supreme Court of Florida on all disciplinary matters. Sup.Ct.Fla., Rules Regulating the Florida Bar, Rule 3–7.7 (1992). This, of course, includes enforcement of Rule 4–8.2(b), requiring judicial candidates to comply with all provisions of the Code of Judicial Conduct.

Under United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant, even when that party has made no attempt to enforce the rule. *Diamond v. Charles,* 476 U.S. 54, 64, 106 S.Ct. 1697, 1704, 90 L.Ed.2d 48 (1986) ("The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III."); *see also Doe v. Bolton,* 410 U.S. 179, 188–89, 93 S.Ct. 739, 745–46, 35 L.Ed.2d 201 (1973) (finding a justiciable controversy between doctors challenging abortion law and state attorney general); *Mobil Oil v. Att'y Gen. of Virginia,* 940 F.2d 73, 76 (4th Cir. 1991) (finding case or controversy between plaintiff bringing pre-enforcement challenge and state attorney general because attorney general has enforcement authority); *Wilson v. Stocker,* 819 F.2d 943, 947 (10th Cir.1987) (same). "Thus a controversy exists not because the state official is himself a source of injury, but because the official represents the state whose statute is being challenged as the source of the injury." *Wilson,* 819 F.2d at 947. This reasoning applies not only to the Bar but with equal force to the JQC, which is empowered under the Florida Constitution to regulate the conduct of the state's judges. Fla. Const. art. V, § 12.[9]

---

9. Both the Bar and the JQC have been the named defendants in a number of actions challenging various portions of the Code of Judicial Conduct and the Rules Regulating the Florida Bar. *See Doe v. State of Florida Judicial Qualifications Comm'n,* 748 F.Supp. 1520 (S.D.Fla.

■ Given its enforcement authority, the Bar is the proper defendant in an action seeking to limit the reach of Rule 4–8.2(b). Schack, at the time the suit was filed, was a lawyer who fell within the Bar's disciplinary jurisdiction. Because Schack is now a judge, and is subject to the disciplinary jurisdiction of the JQC, it appears as if the Bar has no place in the remaining dispute. However, the ACLU is also a plaintiff in this action, challenging Canon 7(B)(1)(a) as facially unconstitutional and seeking to enjoin its enforcement against *all* judicial candidates, be they lawyers or judges.[10] As the Bar would still have the authority to seek sanctions against a lawyer running for judicial office for violating Canon 7(B)(1)(a)—by using Rule 4–8.2(b)—it is a proper party in an action by the ACLU.[11]

This holding finds support in two recent cases, one from the Seventh Circuit and one from the Third Circuit, in which various provisions of a state's judicial conduct code were challenged on constitutional grounds. *Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224 (7th Cir.1993); *Stretton v. Disciplinary Bd. of S. Ct. of Pa.*, 944 F.2d 137 (3rd Cir. 1991). In both cases, the state authorities that regulate the conduct of lawyers and judges were named as defendants and those parties fully litigated the constitutionality of the code provisions. In *Stretton*, as here,

> [b]oth entities were sued because the campaign of a lawyer who is a candidate for judicial office is regulated by the Code of Judicial Conduct. *See* Rule 8.2 of Pennsylvania Rules of Professional Conduct. If the candidate is elected, violations of the Code of Judicial Conduct committed during the campaign come within the jurisdiction of the Judicial Inquiry and Review Board. If the candidate is not elected, the Disciplinary Board would consider infractions occurring during the campaign.

*Stretton*, 944 F.2d at 139. Thus, both the Bar and the JQC were properly named as defendants in this action.

**B.**

The next question is whether an actual and live controversy exists over the constitutionality of Canon 7(B)(1)(a). When a party brings a pre-enforcement challenge to a statute, regulation or ordinance, the federal court must ask whether "the conflicting parties present a real, substantial controversy which is definite and concrete rather than hypothetical and abstract." *Hallandale Prof. Fire Fighters Local 2238 v. City of*

1990) (finding unconstitutional under the First Amendment a provision of the Florida Constitution that barred disclosure of the fact that a complaint had been filed with the JQC); *American Civil Liberties Union, Inc. v. The Florida Bar*, 744 F.Supp. 1094 (N.D.Fla.1990) (the *Horn* case) (preliminary injunction of the enforcement of part of Canon 7(B)(1)(c) of the Code of Judicial Conduct); *Doe v. Supreme Ct. of Fla.*, 734 F.Supp. 981 (S.D.Fla.1990) (finding unconstitutional under the First Amendment a provision of the Rules Regulating the Florida Bar that barred disclosure of the fact that a grievance had been filed against an attorney); *see also* Recent Development, Wendy J. Thurm, *The First Amendment, Attorney Discipline and Public Accountability: Doe v. Supreme Court of Florida and the Florida Bar*, 26 *Harv.C.R.–C.L.L.Rev.* 240 (1991). Although none of the cases explicitly discusses whether the Bar and/or the JQC is a proper party, all of the cases ban enforcement of a provision of the Rules or the Code.

**10.** The substance of the ACLU's cause of action is that the challenged rule violates its members' First Amendment right to receive truthful and legally obtained information about judicial candi-

dates. *See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (preliminary hearings are presumptively open to the public); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (right of access to criminal proceedings may not be overcome only by the assertion that it might deprive the defendant of a right to a fair trial); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984) (showing information would harm a company's reputations is not sufficient to overcome strong common law presumption in favor of public access).

**11.** The absence of the Committee on Standards and the Supreme Court of Florida from the suit does not affect the propriety of the Bar and the JQC as proper party defendants. The Committee on Standards, despite issuing the advisory opinion warning Schack not to engage in his proposed campaign speech, has no power to enforce that opinion. In addition, the Supreme Court of Florida, in promulgating the Rules Regulating the Florida Bar and the Code of Judicial Conduct, was acting in its legislative capacity.

*Hallandale,* 922 F.2d 756, 760 (11th Cir.1991) (citing *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)). In order to prove that a real and substantial controversy exists, under *Babbitt,* a plaintiff must show "a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." 442 U.S. at 298, 99 S.Ct. at 2308. When a plaintiff has stated that he intends to engage in a specific course of conduct "arguably affected with a constitutional interest," however, he does not have to expose himself to enforcement to be able to challenge the law. *Id.* at 298, 99 S.Ct. at 2308–09 (citations omitted). " 'If the injury is certainly impending, that is enough.' " *Id.* at 298, 99 S.Ct. at 2308 (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)) (other citations omitted); *see also Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030, 1033 (11th Cir.1992).

■ To evaluate the nature of the plaintiff's claimed injury, courts "have asked whether the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing the challenged measure." *International Soc'y for Krishna Consciousness v. Eaves,* 601 F.2d 809, 818 (5th Cir. 1979) (allowing pre-enforcement challenge to local ordinance based on the First Amendment).[12] Under *Babbitt,* a plaintiff must allege that either (1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution. *Babbitt,* 442 U.S. at 299, 99 S.Ct. at 2309 (citing *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971)); *see also Renne v. Geary,* —— U.S. ——, ——, 111 S.Ct. 2331, 2339, 115 L.Ed.2d 288 (1991);

*Kaimowitz v. The Florida Bar,* 996 F.2d 1151, 1152–53 (11th Cir.1993). Because Schack's alleged injury is one of self-censorship, the likelihood of disciplinary action by the Bar and the JQC is an important factor in determining whether he reasonably believed that he had to forego what he considered to be constitutionally protected speech in order to avoid disciplinary charges being brought against him.[13]

1.

■ Schack alleges that the combination of (1) the advisory opinion by the Committee on Standards stating that Schack's proposed campaign speech *would* violate Canon 7(B)(1)(a)'s proscription against engaging in conduct that does not "maintain the dignity appropriate to judicial office" and (2) the JQC's refusal to tell Schack *before the suit was filed* whether or not it would seek disciplinary charges forced him to self-censor constitutionally protected speech. Schack also knew that two sitting circuit court judges had been reprimanded publicly for violating Canon 7(B)(1)(a), and the JQC had asked the Supreme Court of Florida to issue a stern warning to future candidates in non-partisan judicial elections to avoid any appearance of non-judicial conduct. *See supra* note 2.

These events placed Schack in the position of having to refrain from potentially protected political speech in order to avoid possible disciplinary action. Moreover, even the hint of impropriety could have had a disastrous effect on his close judicial race.[14] This is precisely the sort of situation the Supreme Court sought to avoid in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505

12. Cases decided by the former Fifth Circuit before October 1, 1981, are binding precedent on this court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

13. We use the term "reasonably" to denote an objective standard and thus avoid the sort of problems that arose in *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). In *Laird,* the Supreme Court denied standing to members of domestic political groups who had been the subject of surveillance by the U.S. Army and who alleged that their political activity had been "chilled." The Court reasoned that the plaintiffs had alleged only a "subjective" chill on

their First Amendment freedoms, which did not meet the constitutional test for establishing standing. *See generally* Note, Jonathan R. Siegel, *Chilling Injuries as a Basis for Standing,* 98 Yale L.J. 905 (1989). Although the issue here is one of broader justiciability concerns, the injury requirement is crucial to both analyses.

14. In fact, after the September 1990 primary, neither Schack nor his main opponent, the incumbent judge, gained a majority of the votes. Schack beat his opponent in a November run-off election.

(1974). *Steffel* involved a declaratory judgment action challenging the constitutionality of Georgia's criminal trespass law, under which the plaintiff was threatened with arrest twice for distributing anti-Vietnam handbills on the sidewalk of a shopping center. In his oft-cited passage, Justice Brennan wrote, "[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.* at 459, 94 S.Ct. at 1216 (citing *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968)).

■ Crucial to the reasoning in *Steffel* is the effect of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), on pre-enforcement challenges. Because *Younger* prevents criminal defendants from challenging the constitutionality of a law in federal court once a criminal proceeding under that law is pending in state court, one should have the opportunity to challenge in federal court the constitutionality of the law as soon as state sanctions have been threatened.[15] The Supreme Court recently reaffirmed this principle in *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), where the Court allowed a pre-enforcement challenge to proceed against Virginia's newly amended obscenity law. The Court wrote:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason

to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure one of self-censorship; *a harm that can be realized without an actual prosecution.*

*Id.* at 393, 108 S.Ct. at 643 (emphasis added).[16]

The Bar and the JQC argue that because they were enjoined from enforcing Canon 7(B)(1)(c) in the *Horn* case, it was not reasonable for Schack to believe that he would be disciplined if he engaged in his proposed campaign speech, and thus, he suffered no cognizable injury. This argument fails. Despite the fact that the ACLU is a common party in the two cases, and both canons were being challenged under the First Amendment, an injunction against one did not bar the enforcement of the other. In addition, although two arms of the Florida Supreme Court's disciplinary system were enjoined from enforcing Canon 7(B)(1)(c), Schack had an advisory opinion from the other arm stating that if he made his proposed speech, he would be violating Canon 7(B)(1)(a). As this court stated in *Fire Fighters:*

> The injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where [F]irst [A]mendment rights are involved, because of the fear that free speech will be chilled

---

15. *Younger* applies to state disciplinary proceedings because they are "judicial in nature." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433–34, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982).

16. In a similar context, the Ninth Circuit, in *American–Arab Anti–Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir.1991), conferred standing on individual non-immigrant aliens who brought an action for declaratory and injunctive relief against the United States, challenging the constitutionality of a federal immigration law that authorized the deportation of an alien "who advocate[s] the economic, international, and governmental doctrines of world communism." 8 U.S.C. § 1251(a)(6)(D).. The Immigration and Naturalization Service had initiated deportation proceedings against the aliens under the above-cited statute and under non-

ideological provisions of the immigration law. After the aliens filed the suit for a preliminary injunction, INS dropped the charges under section 1251(a)(6)(D) but retained the non-ideological charges.

Describing the procedural posture of the aliens' injury, the court wrote:
> Nor is this a case in which the individual appellees' claimed threat of injury is merely "hypothetical" or "conjectural." Already they have once been charged with the challenged provisions, which charges were dropped, not because they were considered inapplicable, but for tactical reasons. Presumably, then, the individual appellees need not run the risk of the consequences of another violation of the challenged provisions in order to find protection.

*Id.* (citations omitted).

even before the law, regulation, or policy is enforced.

922 F.2d at 760 (citing *Solomon v. City of Gainesville*, 763 F.2d 1212 (11th Cir.1985) (allowing pre-enforcement challenge to local ordinance based on the First Amendment); *Eaves*, 601 F.2d 809). Schack's fear of disciplinary action was reasonable and thus, the harm he suffered was an objective chill of his First Amendment rights.

### 2.

■ The more difficult question is whether a live controversy remained after the Bar and the JQC stated in court papers that Canon 7(B)(1)(a) could not be applied constitutionally to Schack's proposed campaign speech. Under *Babbitt*, there must be some possibility that the defendants will seek to enforce the challenged regulation. 442 U.S. at 299, 99 S.Ct. at 2309 (citations omitted). Because both the Bar and the JQC continue to assert that, despite their acquiescence in Schack's initial complaint, Canon 7(B)(1)(a) is constitutional, we have no reason to think that it would not be enforced in the future against Schack or other judicial candidates. This is because neither the Bar nor the JQC is bound by its court statements.

The JQC is not the final arbiter of the interpretation of the Code of Judicial Conduct; the Florida Supreme Court is. *In re Kelley*, 238 So.2d 565, 571 (Fla.1970) ("the power to render the ultimate judgment" in cases involving the interpretation of the Code is vested in the Court). In fact, in a case very similar to the one at bar, a sitting Florida District Court of Appeal judge brought an action against members of the JQC in state court seeking to have Canon 7(A)(1)(b) declared unconstitutional. That section of the Canon provides that judges should not "publicly endorse a candidate for public office." The Florida Supreme Court transferred the case to its docket, pursuant to the state constitution, art. V, §§ 2(a) & 12, and upheld the Canon against the First Amendment challenge. *In re Code of Jud. Conduct*, 603 So.2d 494 (Fla.1992).

In addition, because the members of the JQC serve staggered six-year terms, *see* Fla. Const., art. V, § 12(b), a change in member-

ship could result in a change in JQC policy regarding the interpretation and enforcement of Canon 7(B)(1)(a). Although this may seem far fetched, consider that the membership of the JQC—two judges of the district courts of appeal, two circuit judges, two county judges, two members of the Florida Bar, and five Florida residents not members of the Bar—is strikingly similar to the membership of the Committee on Standards on Conduct of Judges, the committee that issued the advisory opinion to Schack that his proposed campaign speech *would* violate Canon 7(B)(1)(a). The Committee's membership is made up of three judges of the district courts of appeal, four circuit judges, two county judges and one member of the Florida Bar. *See In re Committee on Standards of Conduct for Judges*, 327 So.2d 5 (Fla. 1976).

Specifically as to Schack, the Bar and the JQC would not be bound by their court statements in this case if the same parties were to meet in future litigation on these issues in federal court or in judicial disciplinary proceedings. Even admissions made pursuant to Fed.R.Civ.P. 36—which these statements certainly were not—are binding for purposes of the pending action only. "It is not an admission for any other purpose nor may it be used against the party who made it in any other proceeding." 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2264, at 747 (1970); *see also Matter of Cassidy*, 892 F.2d 637, 640 n. 1 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). In addition, res judicata does not apply in judicial disciplinary proceedings before the Florida Supreme Court. *In re Kelley*, 238 So.2d at 570.

Insofar as the JQC has the discretion to change its policy regarding the interpretation and enforcement of Canon 7(B)(1)(a), this case is analogous to other Eleventh Circuit cases allowing pre-enforcement challenges. As the court noted in *Fire Fighters*, plaintiffs in both *Solomon* and *Eaves* were able to show that a live dispute existed because (1) plaintiffs "wanted to pursue a specific course of action which they knew was at least arguably forbidden by the pertinent law"; and (2) "[a]ll that remained between the plaintiff and

impending harm was the defendant's discretionary decision—which could be changed—to withhold [enforcement]." 922 F.2d at 762.

Moreover, it would be an anomalous result if the Bar and the JQC were permitted to (1) maintain that Canon 7(B)(1)(a) is constitutional and enforceable and yet, if Schack or another judicial candidate in Schack's position were to seek pre-enforcement review, to (2) again come into court saying, "Canon 7(B)(1)(a) does not apply to that proposed speech." This process itself, aside from the canons and the rules, is enough to chill speech.

In a related context, the Supreme Court has held that a case or controversy remains after a defendant voluntarily ceases allegedly improper behavior but is free to resume it at any time. This situation often arises when the parties enter into a voluntary dismissal of the action to which the defendant is not bound. If and when the defendant resumes the harmful activity, and plaintiff goes back into court, the defendant can again cease to engage in the harmful conduct and argue that the case is moot. *United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), created an exception to the mootness doctrine so as to prevent this hardship from occurring. The only way the case would be moot, the Court said, was if " 'the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.' " *Id.* at 633, 73 S.Ct. at 897 (quoting *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (2d Cir.1945)); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n. 10, 102 S.Ct. 1070, 1074–75 n. 10, 71 L.Ed.2d 152 (1982).[17] The "wrong" in this case is the continued assertion by the Bar and the JQC that Canon 7(B)(1)(a) is constitutional. Because they are not bound to their pronouncements in this case that the Canon does not apply to truthful campaign speech, a reasonable expectation exists that this wrong will be repeated.

**3.**

In addition to the non-binding nature of the Bar's and the JQC's statements as to Schack, other judicial candidates, who may not be privy to this litigation, but are aware of the Committee on Standard's advisory opinion issued to Schack, still do not know where they stand under Canon 7(B)(1)(a). Notwithstanding his own injuries, under the Supreme Court's overbreadth doctrine, *see Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), Schack has standing to raise a facial challenge to Canon 7(B)(1)(a).

This is precisely the approach taken by the Third Circuit in *Stretton*, 944 F.2d 137. There, a judicial candidate brought a pre-enforcement challenge to a section of Pennsylvania's Code of Judicial Conduct that bars judicial candidates from announcing their views on disputed legal or political issues. The plaintiff alleged a chill of his protected speech rights and the disciplinary authorities disclaimed that the proposed speech would violate the canon. Nevertheless, the court held that a case or controversy existed. The court wrote:

> The Boards take the position here as they did in the district court that the topics plaintiff proposes to discuss in the course of his campaign do not violate the Code. The Boards, however, do not have the final word on interpretation of the Code. Moreover, plaintiff has also challenged the Canon on overbreadth grounds and may maintain the action on that basis. *See Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 484, 109 S.Ct. 3028, 3037, 106 L.Ed.2d 388 (1989).

*Id.* at 140. In that one paragraph, the Third Circuit summed up the essence of this case. Following their lead, we hold that, after the suit was filed but before the judicial election was held, there was an actual dispute between the parties.[18]

---

**17.** The Supreme Court recently reaffirmed this principle in *Northeastern Florida Contractors v. Jacksonville*, —— U.S. ——, ——, 113 S.Ct. 2297, 2301, 124 L.Ed.2d 586 (1993).

**18.** Admittedly, the canon at issue in *Stretton* was aimed specifically at censoring political speech while the canon at issue in this case is aimed not specifically at speech but at "unbecoming conduct." Nevertheless, because the Committee on Standards has interpreted Canon 7(B)(1)(a) to apply to campaign speech, it is subject to an overbreadth challenge.

### IV.

 The final hurdle to a hearing on the merits of plaintiffs' challenge is to determine whether the judicial election held in November 1990 rendered the case moot. The Supreme Court has recognized that in cases challenging rules governing elections, there often is not sufficient time between the filing of the complaint and the election to resolve the issues. Thus, the Court has allowed such challenges to go forward under the "capable of repetition yet evading review" exception to the mootness doctrine. *See generally First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).[19]

*Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam), established a two-part test for analyzing whether a case is capable of repetition yet evading review. "There must be a 'reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party,' and a showing that ... the 'challenged action was in its duration too short to be fully litigated prior to its cessation or expiration.'" *News–Journal Corp. v. Foxman*, 939 F.2d 1499, 1507 (11th Cir.1991) (citing *Murphy*, 455 U.S. at 482–83, 102 S.Ct. at 1183–84); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481, 110 S.Ct. 1249, 1255, 108 L.Ed.2d 400 (1990) (applying two-part test).

The first part of this test can be satisfied " 'based on expectations that, while reasonable, [a]re hardly demonstrably probable....' " *News–Journal Corp.*, 939 F.2d at 1507 (citing *Honig v. Doe*, 484 U.S. 305, 318–19 n. 6, 108 S.Ct. 592, 601–02 n. 6, 98 L.Ed.2d 686 (1988) (citations omitted)). The district court found that it was unlikely that Schack, or any other judicial candidate, would "run against an opponent who, like Schack's opponent, has skeletons in his closet, indeed clones of the skeletons which prompted this action."[20] We think this analysis construes the nature of the complaint too narrowly.

Because Schack and the ACLU asserted a facial challenge to Canon 7(B)(1)(a) in addition to Schack's as-applied challenge, we view the gravamen of the complaint as a challenge to the Bar's and the JQC's ability to constitutionally prohibit a judicial candidate from publicly discussing legally obtained truthful information about her opponent. Given that Schack, who is now a state circuit court judge, must run for re-election, it is reasonable to believe that he will want to engage in such speech but the existence of Canon 7(B)(1)(a) will force him to self-censor again. It is also safe to assume that ACLU members will continue to be interested in receiving this information. The second prong of the test is met because this action was not fully adjudicated before the state judicial elections in November, 1990.

The Seventh Circuit agrees. In *Buckley*, an action challenging various provisions of Illinois' Code of Judicial Conduct, the court addressed this same question. The court wrote:

> A further consideration in support of the conclusion that we have a live controversy is the brevity of judicial campaigns in relation to the leisureliness of litigation, which prevented the appeal[ ] ... from being decided before ... [the election]. Should [the judge] decide to run for the next open position ..., by the time he decides it will probably already be too late for him to file a suit that we would be able to decide before the election; and during such a campaign the Illinois Courts Commission's finding that he violated the rule would undoubtedly be used against him, as it was, we are told, in his retention campaign. This brings our case within the orbit of *Moore v. Ogilvie*, 394 U.S. 814, 816 [89 S.Ct. 1493, 1494, 23 L.Ed.2d 1] (1969),

---

**19.** "The 'capable of repetition yet evading review' doctrine is [particularly] appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks. The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held." *Storer*, 415 U.S. at 737 n. 8, 94 S.Ct. at 1282–83 n. 8.

**20.** R.1–35 at 9.

which allowed a challenge to a state election law to be maintained after the election in which the plaintiffs had run for office because the law would affect future elections. *See also Renne v. Geary*, [—— U.S. ——, ——,] 111 S.Ct. 2331, 2338 [115 L.Ed.2d 288] (1991).

*Buckley*, 997 F.2d at 226.

The *Buckley* court also emphasized that the Illinois Judges Association had standing to challenge the Code provision on its face because it was highly likely that "many judges ... will be running either for retention or for higher judicial office, and Rule 67(B)(1)(c) will inhibit their campaign statements." *Id.* Similarly, the ACLU's facial challenge should go forward because it is highly likely that its members will want to receive uninhibited campaign information in the future.

*Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), does not control this case. *Zwickler* involved a campaign worker who sought to distribute anonymous campaign handbills criticizing a congressman's voting record in contravention of a state statute prohibiting the distribution of anonymous campaign literature. Zwickler had been convicted for this conduct during the 1964 congressional campaign, but his conviction was reversed by the state appellate court on state law grounds. Prior to the 1966 campaign, Zwickler brought a declaratory judgment action challenging the constitutionality of the state law and alleging that he intended to engage in the same conduct that had led to his original arrest.

The Court ruled that Zwickler's action was moot because the congressman who had been the target of the handbills had resigned from Congress to take a place on the New York Supreme Court. *Id.* at 109, 89 S.Ct. at 960. The Court noted that Zwickler's complaint focused on his ability to distribute handbills about that one congressman, and since it was unlikely that the congressman would again be a candidate for Congress in the near future, no live dispute was before the district court. *Id.* Zwickler only had an as-applied challenge and because the facts creating his injury had substantially changed, there was no longer a live controversy.

The case at bar differs from *Zwickler* in two important respects. First, as to the as-applied nature of Schack's challenge, his desire to disclose publicly certain information about a campaign opponent is likely to recur. Second, this case involves a facial attack on Canon 7(B)(1)(a), broader in its scope than the plaintiff's challenge to the New York law at issue in *Zwickler*. Such facial attacks on election related laws have been upheld time and again by the Supreme Court, in one case as recently as the 1991–92 term. *See Norman v. Reed*, —— U.S. ——, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977).

Under this analysis, the district court's decision to dismiss the case on mootness grounds is REVERSED and the case is REMANDED to the court to proceed to the merits of the case.