8330 **TOKYO VALENTINO, LLC, Plaintiff,**

v.

**CITY OF MIAMI, FLORIDA, Defendant.**

**Case No. 13–23032–CIV.**

United States District Court, S.D. Florida.

Dec. 30, 2013.

Daniel Robert Aaronson, Benjamin & Aaronson, Fort Lauderdale, FL, Gary Scott Edinger, Benjamin, Aaronson, Edinger & Patanzo, P.A., Gainesville, FL, for Plaintiff.

Warren Bittner, Miami City Attorney's Office, Miami, FL, for Defendant.

## ORDER

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court on Plaintiff's Motion for a Preliminary Injunction (D.E. 4) and the City of Miami's Motion to Dismiss and Cross–Motion for Summary Judgment (D.E. 9).

THE COURT has considered the motions and the pertinent part of the record, and is otherwise fully advised of the premises.

## BACKGROUND

Plaintiff leases property located at 8330 Biscayne Boulevard in Miami, Florida. Plaintiff's property is zoned T6–8–0, which allows for retail uses and places of assembly for purposes of entertainment. (Compl. ¶ 15.) Plaintiff alleges that it seeks to operate a retail business which provides the following: (i) non-adult DVDs for sale or rent, (ii) non-adult clothing, games and memorabilia, (iii) luxury movie theaters or viewing booths where customers may rent DVD movies and view them on premises or bring in their own movies for a fee.[1] (Compl. ¶ 14.) With respect to the DVD movies, Plaintiff alleges that these movies are "conventional movies of the kind one could find in a Blockbuster Video or rent through Netflix (i.e. movies with MPAA ratings of G, PG, PG–13 or R)." (Compl. ¶ 83.) Moreover, Plaintiff contends that the "movies do not feature 'specified sexual activities' or 'specified anatomical areas' as those terms are defined by the Miami Zoning Ordinance," "the movies are not X-rated or pornographic, do not feature any sexual acts, and any nudity is fleeting and no more extensive than one would find in a typical PG–13 or R-rated movie." (Id.)

Plaintiff's first application for a certificate of use for a retail store is dated September 1, 2011 and its latest application is dated June 27, 2013. (See Exhibit B–1 & B–2 of D.E. 9–1.) Plaintiff's only application for a business license is dated August 17, 2011. (See Exhibit A of D.E. 9–2.) Based on an email dated August 2, 2013 from Victoria Méndez, a Deputy City Attorney for the City of Miami, to Daniel Aaronson, one of Plaintiff's lawyers, Plaintiff alleges that Defendant will not issue it a business license or a certificate of use. (Compl. ¶ 20.) The email states that based on Plaintiff's website, pictures taken during the inspection, the build-out and merchandise sold in the store, "it is clear that [Plaintiff's] intention is to utilize the property for an adult entertainment establishment." (Id.) The email further states that "[t]his use is prohibited in T–6–80" and "[u]nder these circumstances, the City is unable to issue any type of certificate of use or business tax receipt that may allow this type of use." (Id.) Based on this

---

1. The use of "non-adult" throughout this Order is adopted from the terminology used by Plaintiff in its Complaint. The Court does not use this terminology to suggest that Plaintiff's retail store sells children's DVDs, clothing and the like. Instead, the use of "non-adult" reflects the Plaintiff's attempt to describe its retail items as items that are not strictly for adults.

email, Plaintiff argues that it has been denied a certificate of use and a business license. (Compl. § 20–21; D.E. 20 at 2–4.)

In addition, Plaintiff argues that the Defendant has bolstered its denial of a certificate of use and a business license through the imposition of an enforcement lien against Plaintiff's landlord and that lien is based on the Defendant's claim that Plaintiff is operating an "adult entertainment establishment" in the wrong zone. (D.E. 20 at 3.)

On November 26, 2013, the Court ordered Plaintiff to submit copies of the notices of violation it has received from the Defendant as well as any documents indicating that a lien is currently in force on its rental location. (D.E. 26.) In response, Plaintiff submitted to the Court the various notices of violation its landlord, 8330 Biscayne Boulevard LLC, has received from the Defendant. (D.E. 27.) The notices relating to Case No. CE2012002369 are the only notices relevant to the issues in this case because these notices focus on the Defendant's determination of whether the Plaintiff's rental location is an "adult entertainment establishment." (D.E. 27–1–27–4.) The notices relating to Case No. CE2012002369, which are dated February 1, 2012, February 16, 2012, February 29, 2012 and October 29, 2012, show that the Defendant notified Plaintiff's landlord that it was in violation of the Zoning Ordinance of the City of Miami ("Zoning Ordinance") by operating an "adult entertainment establishment" in the wrong zone and directed Plaintiff's landlord to correct the violation and/or appear for a hearing to discuss the violation. (Id.) In addition to these notices, the Plaintiff's landlord received a "Final Administrative Enforcement Notice," which is dated December 17, 2012 and shows that the Defendant found it guilty of violating the Zoning Ordinance because of the "erection, construction, posting, etc. of a sign without a finalized permit," not due to a violation based on the operation of an "adult entertainment establishment." (D.E. 27–5.) The final notice also shows that Plaintiff's landlord was notified that a lien would be imposed at a rate of $200 per day if the violation was not corrected by January 22, 2013.

Plaintiff has also submitted an Affidavit from Robert Kahn, the attorney for 8330 Biscayne Boulevard LLC, Plaintiff's landlord, as well as three other affidavits from its employees stating that the Defendant has repeatedly voiced concerns about Plaintiff operating an "adult entertainment establishment." (D.E. 20–1, 20–2, 20–3 & 20–4.) Contrary to the Final Administrative Enforcement Notice, Mr. Kahn states that he was informed by Quatisha Oguntoyinbo, a supervisor for the Code Enforcement Department of the City of Miami, and someone named Carlos from the Hearing Boards Department of the City of Miami that there was an active lien against Plaintiff's rental location for being an "adult entertainment establishment." (D.E. 20–2.)

Plaintiff alleges that as a result of the Defendant's actions its retail store is closed, which means that it is unable to disseminate its movies, it cannot provide viewing booths for its patrons, and it is losing profits that would have been generated by those movies and the sale of other retail products. (Compl. § 21–22.) Plaintiff alleges, and the Defendant agrees, that it does not operate an "adult entertainment establishment." (See Compl. ¶¶ 28 & 89; D.E. 20 at 2 & 15; D.E. 9 at 4.)

In its Complaint, filed on August 22, 2013, Plaintiff mounts a facial and as-applied challenge to the definition of "adult entertainment establishment" found in Article 1.1(d) of the Zoning Ordinance, which states:

Entertainment Establishment, Adult; Adult entertainment, in general; adult entertainment services or adult entertainment services establishment (hereinafter referred to throughout the code as "Adult entertainment"): Any establishment which sells, rents, leases, trades, barters, operates on commission or fee, purveys, displays, or offers only to or for adults, products, goods of any nature, images, reproductions, activities, opportunities for experiences or encounters, moving or still pictures, entertainment, and/or amusement, distinguished by purpose and emphasis on matters depicting, describing, or relating by any means of communication, from one (1) person to another, to "Specified Sexual Activities" or "Specified Anatomical Areas" as herein defined in Section 1.2 of this Code. Such establishment may or may not be open or available to the public generally, but shall exclude any person under eighteen (18) years of age. It is the intent of this definition that determination as to whether or not a specific establishment or activity falls within the context of regulation hereunder shall be based upon the activity therein conducted or proposed to be conducted as set out above and in these regulations. Such establishment shall not depend upon the name or title of the establishment used or proposed, and it shall be irrespective of whether or not members of the public are invited to enter such establishment. Thus, the terms "adult bookstore," "adult massage parlor," "adult motion picture theater," "adult private dancing," and "adult escort service" are encompassed within this definition of "Adult entertainment", but the term "Adult entertainment" is not to be deemed limited by the enunciation of specific activities listed before. Adult entertainment establishments are allowed in D2 industrial, subject to the limitations set forth in Article 6, Table 13.

Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 with respect to the first four counts and declaratory relief pursuant to Chapter 86 of the Florida Statutes with respect to the fifth count under the following theories:

(i) the definition of "adult entertainment establishment" is vague in violation of the Fourteenth Amendment because (a) the language does not follow grammatical rules namely due to the use of confusing and disordered phrasing, extensive use of dependent clauses and the random placement of commas; (b) the subparts and clauses of the definition defy common understanding namely the reference to "opportunities for experiences or encounters;" (c) the definition is open-ended and is intended to apply to uses which are not described by the Code; (d) key terms used to define "adult entertainment establishment" such as "adult bookstore," "adult massage parlor," "adult motion picture theater," "adult private dancing," and "adult escort service" are undefined; and (e) the definition is merely illustrative of the kind of businesses which might fall within the definition and this encourages arbitrary and capricious enforcement (Count I);

(ii) the definition of "adult entertainment establishment" is overbroad in violation of the First Amendment because (a) it is not limited to businesses which might cause adverse secondary effects; (b) several clauses in the definition suggest that an "adult entertainment establishment" would include any business which excluded minors or caters only to adults; (c) the definition suggests that even a single book featuring specified anatomical areas or the airing of a single sexually oriented movie would classify a business as an "adult entertainment establishment"; and (d) the

ordinance does not include an exception for theatrical nudity or other circumstances in which sexually explicit communications are protected by the First Amendment (Count II);

(iii) the definition of "adult entertainment establishment" is not narrowly tailored in violation of the First Amendment because of all of the reasons listed with respect to Count II and the ordinance applies on its face to a variety of mainstream retail and service establishments and no effort was made by the Defendant to limit its effect to what is commonly thought of as "adult entertainment" (*i.e.* nude bars and adult bookstores) (Count III);

(iv) the definition of "adult entertainment establishment" creates a content-based restriction on speech in violation of the First Amendment because the legislative predicate shows that the law was intended to limit free speech directly rather than targeting the secondary effects thought to be associated with exotic dancer performances (Count IV); and

(v) Plaintiff does not operate an "adult entertainment establishment" and the Defendant's zoning provisions relative to "adult entertainment establishment's do not apply to it (Count V)."

On August 23, 2013, Plaintiff filed a Motion for a Preliminary Injunction. (D.E. 4.) On September 24, 2013, Defendant moved to dismiss the Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6), for summary judgment pursuant to Fed. R.Civ.P. 56, and a denial of the Motion for a Preliminary Injunction pursuant to Fed. R.Civ.P. 65. The motions are fully briefed and ripe for review.

### DISCUSSION: STANDING

█ Standing is a threshold jurisdictional question that every court must address before ruling on the merits of a claim. *CAMP Legal Defense Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1269 (11th Cir.2006). To establish standing, Plaintiff bears the burden of showing: "(i) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (ii) a causal connection between the injury and the causal conduct, and (iii) a likelihood that the injury will be redressed by a favorable decision." *Galardi v. City of Forest Park,* 449 Fed.Appx. 783, 785 (11th Cir.2011) (quoting *CAMP,* 451 F.3d at 1269) (internal quotations omitted). For the reasons below, the Court finds that Plaintiff lacks standing to pursue Counts I‑IV.

### *Injury In Fact*

█ "An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations omitted). With respect to Counts I–III, Plaintiff alleges that the definition of "adult entertainment establishment" creates a chilling effect on its speech rights and of other citizens within the City of Miami. (Compl. ¶¶ 49, 57 & 66.) To demonstrate an actual or imminent injury from a chilling effect, a plaintiff must allege that "he reasonably believe[s] that he had to forego what he considered to be constitutionally protected speech." *ACLU v. Fla. Bar,* 999 F.2d 1486, 1492 (11th Cir.1993); *Isle of Dreams, LLC v. City of North Bay Village, Fla.,* 513 Fed.Appx. 917, 920 (11th Cir.2013).

█ Plaintiff adamantly alleges that it is not an "adult entertainment establishment" as defined by Article 1.1(d) of the Zoning Ordinance and Defendant agrees. (*See* Compl. ¶¶ 28 & 89; D.E. 20 at 2 & 15; D.E. 9 at 4.) Based on Plaintiff's own

allegations, the Court concludes that Plaintiff cannot allege an injury in fact because it is not an "adult entertainment establishment," has not applied for a certificate of use or business license to operate as an "adult entertainment establishment" and all of its claims focus on the City of Miami's application of the definition of "adult entertainment establishment." *Voyeur Dorm, L.C. v. City of Tampa, Fla.,* No. 02–14570, 2003 WL 23208270, at *1 (11th Cir. Feb. 19, 2003) (finding that plaintiff did not have standing to challenge an adult business ordinance because it was not an adult business); *Flava Works, Inc. v. City of Miami, Fla.,* 800 F.Supp.2d 1182, 1187–88 (S.D.Fla.2011) (same); *Tops Sales & Servs., Inc. v. City of Forest Park,* 2010 WL 5068193, at *4 (N.D.Ga. Dec. 7, 2010) (same). If Plaintiff is not an "adult entertainment establishment," the City of Miami's application of "adult entertainment establishment" in its zoning decisions does not affect Plaintiff's First and Fourteenth Amendment rights.

Moreover, the record shows that Plaintiff has not been denied a certificate of use or business license based on the fact that it operates an "adult entertainment establishment." Plaintiff relies too heavily on the email from Deputy City Attorney Méndez in its argument that it has been denied a certificate of use and business license because the Defendant determined it operates an "adult entertainment establishment." The email merely informs Plaintiff that the Defendant will not issue certificates of use or business licenses that would allow Plaintiff to operate an "adult entertainment establishment" at its rental location. (D.E. 24–1.) Setting aside whether Deputy City Attorney Méndez has the authority to speak for the City of Miami, the email does not inform Plaintiff that its applications have been denied and serves as a sort of cautionary warning from the City of Miami to Plaintiff.

Lastly, the Court finds the notices of violation and the documents relating to the lien equally unhelpful in showing that the certificate of use or business license have been denied based on a determination that Plaintiff operates an "adult entertainment establishment." Based on the record before the Court, it is clear that at one point the Defendant believed that the property at 8330 Biscayne Boulevard may be operating as an "adult entertainment establishment" in violation of the Zoning Ordinance. (*See* D.E. 27–1–27–4.) However, after a hearing before the Code Enforcement Board, the final ruling from the Code Enforcement Board was that Plaintiff's landlord was in violation of Section 6.5 of the Zoning Ordinance, which relates to the erection, construction and posting of a sign without a finalized permit. (*See* D.E. 27–5.)

*Redressability*

■■■ To establish redressability, Plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Galardi,* 449 Fed.Appx. at 784–85 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Court finds that Plaintiff also cannot satisfy the redressability prong of the standing analysis. Here, even if the Court were to find that the definition of "adult entertainment establishment" violates the First and Fourteenth Amendments in the manner alleged in the Complaint, such a decision would still not allow Plaintiff to obtain a certificate of use or business license to operate a non-adult retail and entertainment business.

As discussed in detail above, there is no evidence before the Court that Plaintiff has been denied a certificate of use or business license based upon the Defendant's application of the definition of "adult

entertainment establishment" found in its Zoning Ordinance.

Plaintiff reliance on *Flava Works, Inc. v. City of Miami, Fla.,* 559 F.Supp.2d 1318 (S.D.Fla.2008), is misplaced. In *Flava Works, Inc.,* the Code Enforcement Board ruled that the Plaintiffs had operated an "adult entertainment establishment" in the wrong zone. *Id.* at 1320. Here, the Code Enforcement Board has made no such determination and the final ruling from the Code Enforcement Board is that Plaintiff's landlord was in violation of Section 6.5 of the Zoning Ordinance, which relates to the erection, construction and posting of a sign without a finalized permit. (*See* D.E. 27–5.)

*Traceability*

▮ In order to have standing, "there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (internal quotation omitted). Plaintiff challenges the definition of "adult entertainment establishment" but has not been injured based on the Defendant's application of this definition. *See supra* pp. 1332–33. Therefore, Plaintiff cannot satisfy the traceability requirement of the standing analysis.

### DISCUSSION: SUPPLEMENTAL JURISDICTION

▮ With respect to Count V, the Plaintiff requests that the Court exercise supplemental jurisdiction and determine pursuant to Chapter 86 of the Florida Statutes whether it operates an "adult entertainment establishment" and the Defendant's zoning provisions on adult entertainment establishments apply to it. (Compl. ¶ 82.) Because the Court has found that

Plaintiff lacks standing to pursue Counts I–IV, the only counts which the Court has federal question jurisdiction over, the Court declines to exercise supplemental jurisdiction over Count V. It is also worth noting that there is no factual dispute before the Court as to whether Plaintiff operates an "adult entertainment establishment" because both parties have stipulated that Plaintiff does not operate such an establishment. (*See* Compl. ¶¶ 28 & 89; D.E. 20 at 2 & 15; D.E. 9 at 4.)

### CONCLUSION

For the foregoing reasons, Plaintiff lacks standing to pursue Counts I–IV and the Court declines to exercise supplemental jurisdiction over Count V. It is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Preliminary Injunction (D.E. 4) is DENIED and Defendant's Motion to Dismiss and Cross–Motion for Summary Judgment (D.E. 9) is GRANTED. It is further

ORDERED AND ADJUDGED that the Complaint (D.E. 1) is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that for administrative purposes this case is hereby CLOSED and all pending motions DENIED AS MOOT.