Hon. Gary G. GRAHAM and Christopher Litras, Plaintiffs–Appellants,

v.

Robert A. BUTTERWORTH, Bradley E. King, Defendants–Appellees.

No. 92–3115.

United States Court of Appeals, Eleventh Circuit.

Oct. 25, 1993.

Kenneth J. Servay, M. David Gelfand, Tulane Law School, New Orleans, LA, for plaintiffs-appellants.

George L. Waas, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for defendants-appellees.

Before FAY and HATCHETT, Circuit Judges, and JOHNSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Because events subsequent to the filing of this lawsuit have rendered it moot, we dismiss this appeal.

## I. FACTS

In 1990, Gary Graham was a candidate for the office of county court judge for Citrus County, Florida, and Christopher Litras, a resident of Citrus County, supported Graham in his campaign. As part of his campaign literature, Graham paid for the printing of 5,000 postcards reading: "I am supporting Judge Graham because: _____." The blank space allowed supporters to insert reasons for supporting Graham. Supporters would then mail the postcards to other voters to inform them of Graham's campaign. Each postcard stated: "Paid for by the campaign account of Gary Graham," denoting that it was a paid political advertisement. Graham, Litras, and other supporters distributed approximately 50 to 100 of these postcards in Citrus County.

During the campaign, Graham also received a number of unsolicited letters from area voters. With the written consent of the voters, Graham paid to have some of their letters reprinted in local newspapers as part of an advertisement for Graham's candidacy. Each advertisement stated: "Paid for by campaign account for Gary Graham," indicating that it was a paid political advertisement.

During the campaign in August of 1990, Charles Horn, Graham's opponent, publicly accused Graham of violating Florida Statute § 105.071(11). Florida Statute § 105.071(11) reads: "A candidate for judicial office shall not: ... (11) Agree to pay all or any part of any advertisement sponsored by any person, group, or organization wherein the candidate

may be endorsed for judicial office by any such person, group, or organization."

On August 27, 1990, Bradley King, State Attorney for the Fifth Judicial Circuit, which includes Citrus County, informed Graham that the distribution of the postcards and the publication of the letters of support violated the statute. Because the state attorney concluded that Graham did not have the requisite criminal intent to violate the statute, and Graham's opponent did not wish to have the grand jury investigate the incident, the state attorney took no further action.

Graham won the election for county court judge for Citrus County in 1990 and now states that he intends to seek reelection in 1994.[1] Litras states that he intends to support Graham's reelection bid. Graham also states that he intends to use similar advertising in the form of postcards and advertisements displaying unsolicited letters of support when he seeks reelection.

## II. PROCEDURAL HISTORY

On March 16, 1992, Graham and Litras, collectively appellants, filed this lawsuit against Robert Butterworth, State of Florida Attorney General, and Bradley King, seeking declaratory and injunctive relief against enforcement of Florida Statute § 105.071(11). Butterworth and King, collectively appellees, filed a motion to dismiss, which the district court denied on June 26, 1992. On July 20, 1992, both parties filed cross motions for summary judgment. On October 6, 1992, the district court denied the appellants' motion for summary judgment and granted the appellees' motion for summary judgment, finding that the statute did not proscribe the appellants' intended conduct; thus, no actual threat of injury existed, and therefore, no "case or controversy" existed. The appellants brought this appeal.

## III. CONTENTIONS OF THE PARTIES

The appellants contend that they have "standing" to challenge the statute because an opponent accused Graham of violating the

statute, and the state attorney informed Graham that this conduct violated the statute; thus, the appellants were threatened with prosecution. The appellants also contend that the fact that the appellees have indicated that they will not prosecute does not divest standing because a future prosecutor remains free to prosecute the appellants or other judicial candidates under the statute. Moreover, the appellants argue that they have standing to challenge the statute under any circumstance because it is overbroad and has a chilling effect on political speech.

The appellees contend that the appellants' prior conduct did not violate the statute, and the appellants failed to show that they suffered an actual injury. Additionally, the appellees argue that the appellants cannot show that they are about to engage in conduct that the statute prohibits. Moreover, the appellees argue that the appellants' fear of the threat of prosecution is misplaced because the statute does not apply to their prior or intended conduct; thus, the appellees have continuously maintained that they cannot prosecute the appellants.

## IV. ISSUE

We must decide whether the appellants have standing to challenge Florida Statute § 105.071(11), and if so, whether subsequent developments have rendered this case moot.

## V. STANDARD OF REVIEW

■ We review *de novo* a district court's grant of summary judgment. *Key West Harbour Development Corp. v. City of Key West, Florida,* 987 F.2d 723, 726 (11th Cir. 1993).

## VI. DISCUSSION

■ Article III of the United States Constitution requires that federal courts address only "cases and controversies." *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). The case and controversy doctrine places a dual limitation upon

---

1. After the district court's order issued on October 6, 1992, the Florida Supreme Court removed Graham from judicial office on June 24, 1993.

*Inquiry Concerning a Judge, Re: Graham,* 620 So.2d 1273 (Fla.1993).

federal courts which is termed "justiciability." *Flast*, 392 U.S. at 95, 88 S.Ct. at 1950. Justiciability, then, seeks to ensure that federal courts address only questions presented in an adversarial context and that the judiciary will not encroach upon the powers of other branches of government. *Flast*, 392 U.S. at 94–95, 88 S.Ct. at 1949–50. "Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." *Flast*, 392 U.S. at 95, 88 S.Ct. at 1950.

### A. Standing

■ Before a federal court may address the merits of a legal claim, the litigants must establish standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990). Although the person challenging the statute does not have to await threatened injury to obtain relief, a plaintiff who challenges a statute must demonstrate "a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." *American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1492, (11th Cir.1993) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)). Thus, an appropriate plaintiff is one who has "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution," not one who simply has "imaginary or speculative" fears of state prosecution. *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308. With the principles of standing set forth, we now seek to determine whether the appellants had standing to challenge the statute.

■ At the time the appellants filed this action, Graham was a judicial candidate, a county court judge for Citrus County intending to seek reelection in 1994. During the prior campaign in 1990, the appellants engaged in arguably protected political conduct, and the state attorney advised Graham that the statute prohibited this campaign conduct. The state attorney declined to prosecute, however, because he believed that Graham lacked the criminal intent to violate the statute, and Graham's opponent did not seek a grand jury investigation. Nevertheless, at the time the appellants filed this action, a credible threat of prosecution existed because they intended to engage in arguably protected conduct, which the statute seemed to proscribe. *See ACLU*, 999 F.2d at 1492 (stating that a plaintiff must allege that he was threatened with prosecution, prosecution is likely, or a credible threat of prosecution exists). Hence, we hold that at the time the appellants filed this action, they had standing to challenge the statute.

### B. Mootness

■ Although the appellants had standing when they filed this lawsuit, subsequent developments have rendered this case moot. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).

■ After the appellants filed this lawsuit, the appellees withdrew their initial determination that the appellants' conduct violated the statute, and also informed the appellants that their intended campaign conduct would not fall within the ambit of the statute.[2] Thus, the appellees cannot seek prosecution against the appellants or other judicial candidates engaging in similar campaign conduct. Clearly, then, no possibility exists that the appellees will seek to enforce the challenged statute against the appellants or other judicial candidates intending to distribute postcards or print unsolicited letters of support of the type involved in this case in the future. *See ACLU*, 999 F.2d at 1494 (stating that some possibility must exist that the defen-

---

**2.** Specifically, in the appellees' Motion to Dismiss, Answer to Standard Interrogatories, Motion for Summary Judgment, appellees briefs, and during oral argument to this court, the appellees repeatedly represented that the appellants' proposed campaign conduct does not violate the statute.

dants will seek to enforce the challenged regulation).

We are aware that *ACLU* reached a different result; however, it is distinguishable. In *ACLU*, a judicial candidate, Larry Schack, desired to speak openly about his opponent in his campaign speeches. Aware that other judicial candidates had violated the Florida Code of Judicial Conduct (Code), Schack requested an advisory opinion from the Committee on Standards of Conduct Governing Judges regarding whether his proposed speeches would violate the Code. The Committee advised Schack that Canon 7(B)(1)(a) of the Code prohibited his proposed campaign speeches. Schack then asked the Judicial Qualifications Commission (JQC) whether it would enforce the canon against him; it refused to reply. Thus, Schack, joined by the ACLU, sued the Florida Bar (Bar) and the JQC.

After Schack filed suit, the Bar and the JQC stated that the canon did not prohibit Schack from making his proposed campaign speeches and that they did not intend to enforce the canon against him. The Bar and the JQC maintained, however, that the canon was constitutional. The court found that a live controversy existed, even after the Bar and the JQC acquiesced to Schack's position, because the Bar and the JQC maintained that the challenged canon was constitutional and that Schack's proposed speech fell within the parameters of what the canon regulated, but that they would not enforce it against Schack in this case; thus, a possibility existed that the Bar and the JQC would seek to enforce the challenged regulation against Schack or other judicial candidates in the future. *ACLU*, 999 F.2d at 1494.

In this case, however, the appellees have repeatedly stated that the statute does not prohibit the appellants' proposed conduct of distributing postcards and publishing unsolicited letters of support of the type involved in this case; thus, the appellees cannot enforce this statute against the appellants or other judicial candidates engaging in the same conduct because, unlike in *ACLU,* the appel-

lants' proposed conduct does not fall within the parameters of what the statute seeks to regulate. Hence, we hold that the appellees' representation that the statute does not proscribe the appellants' proposed conduct renders this case moot.[3]

### VII. CONCLUSION

We conclude that the appellants had standing to challenge the statute, but that the appellees' conduct after the appellants filed this lawsuit rendered this case moot. Accordingly, we dismiss this appeal.

DISMISSED.

---

**3.** Because the challenged statute does not regulate the conduct that the appellants intend to engage in, they do not have standing to raise an

overbreadth challenge to the statute. *See Dimmitt v. City of Clearwater,* 985 F.2d 1565 (11th Cir.1993).