United States Court of Appeals,

Eleventh Circuit.

No. 97-4295.

SOCIALIST WORKERS PARTY, et al., Plaintiffs-Appellants,

v.

David LEAHY, Supervisor of Elections, Dade County, et al., Defendants-Appellees.

July 7, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-1451-CV-KMM), K. Michael Moore, Judge

Before ANDERSON, CARNES and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This appeal arises out of plaintiff-appellants Socialist Workers Party ("SWP") and the Florida Green Party's ("FGP") challenge to the constitutionality of Section 103.121(3), Fla. Stat., a provision of Florida's election laws that requires the chairs and treasurers of political parties in Florida to file certain bonds. Because defendant-appellees Secretary of State Sandra Mortham and Florida's sixty-seven county supervisors of elections disavowed any authority to enforce the challenged statute and retracted prior enforcement efforts, the district court found the matter to be non-justiciable, granted defendant-appellees' motion for summary judgment, and denied SWP and FGP's motion for reconsideration. Since we find that the Secretary of State has on multiple occasions in the past threatened to enforce the bonding requirement against SWP and FGP, and that the Secretary of State continues to present a credible threat of future enforcement, we reverse the district court's entry of summary judgment in favor of defendant-appellee Secretary of State Mortham, and remand the case for proceedings on the merits of plaintiff-appellants' case against the Secretary of State. However, because we can find no basis for any of the county supervisors of

elections to enforce the bonding requirement against plaintiff-appellants, we affirm the district court's entry of summary judgment in favor of the sixty-seven county supervisors of elections.

I.

The Secretary of State of Florida acts as the "chief election officer of the state" and bears the responsibility for the "general supervision and administration of the election laws...." Sections 97.012 & 15.13, Fla. Stat. Among her many responsibilities, the Secretary of State supervises the Director of the Division of Elections. She also administers the mechanism through which a group of individuals may register with the state of Florida as a "minor political party."[1] Along with other benefits, minor political parties are entitled to run qualifying candidates for elected office and to identify these candidates on election ballots as members of their parties.

Plaintiff-Appellants SWP and FGP are registered minor political parties in the state of Florida. The relevant facts begin when, on April 21, 1992, then Director of the Division of Elections Dorothy Joyce sent plaintiff-appellants a letter stating, in relevant part:

> ... Section 103.121(3) Florida Statutes, provides that the chairman and treasurer of an executive committee of any political party must provide adequate bond, not less than $10,000 to be filed with the Department of State.

---

[1]Section 97.021(13) defines the term "minor political party" as follows:

> "Minor political party" is any group as defined in this subsection which on January 1 preceding a primary election does not have registered as members 5 percent of the total registered electors of the state. Any group of citizens organized for the general purposes of electing to office qualified persons and determining public issues under the democratic processes of the United States may become a minor political party of this state by filing with the department a certificate showing the name of the organization, the names of its current officers, including the members of its executive committee, and a copy of its constitution or bylaws. It shall be the duty of the minor political party to notify the department of any changes in the filing certificate within 5 days of such changes.

Upon reviewing the statute, SWP and FGP became aware that Section 103.121(3)[2] additionally requires the chair and treasurer of each of its county executive committees to file a bond of at least $5,000 with the county supervisors of elections. Because SWP and FGP lacked the financial resources to pay the costs associated with posting the required bonds, it sought an advisory opinion from the Secretary of State concerning whether SWP and FGP could obtain a waiver of the bonding requirement.[3] On behalf of Jim Smith, then the Secretary of State, Assistant General Counsel Michael T. Cochran responded,

> ...

---

[2]In pertinent part, Section 103.121(3) provides,

> ... The chair and treasurer of the state executive committee of any political party shall furnish adequate bond, but not less than $10,000, conditioned upon the faithful performance by such party officers of their duties and for the faithful accounting for party funds which shall come into their hands; and the chair and treasurer of a county executive committee of a political party shall furnish adequate bond, but not less than $5,000, conditioned as aforesaid. A bond for the chair and treasurer of the state executive committee of a political party shall be filed with the Department of State. A bond for the chair and treasurer of a county executive committee shall be filed with the supervisor of elections....

[3]Plaintiff-Appellants also requested an advisory opinion regarding whether they could receive a waiver of 99.097(4), Fla. Stat., which requires candidates or minor political parties to pay ten cents per signature for the supervisor of elections to check each signature in a petition submitted by that party or candidate for access to a statewide ballot. Although the statute allows a candidate who certifies that he or she is unable to pay such a fee to receive fee verification at no charge, it does not provide a mechanism to enable a minor political party to obtain a waiver of the signature charge under similar conditions. The Secretary of State replied that he could not waive the fee requirement, and plaintiff-appellants originally challenged the constitutionality of this statute as well as Section 103.121(3). While the case currently under review was pending in district court, however, we concluded that Section 99.097(4) violated equal protection concerns embodied in the Constitution. *See Fulani v. Krivanek,* 973 F.2d 1539, 1547 (11th Cir.1992). In accordance with our holding, the district court in the current matter issued an order permanently enjoining all Florida supervisors of elections from enforcing the aspect of Section 99.097(4) that denies minor political parties the ability to obtain a fee waiver. Based on this injunction, the district court pronounced plaintiff-appellants' challenge to the constitutionality of Section 99.097(4) moot. Plaintiff-Appellants do not appeal from this part of the district court's order.

The answer ... is no.

Neither the Department of State, the Division of Elections, nor local filing officers, have authority to waive the bonding requirement....

....

Upon receiving the Secretary of State's advisory opinion, SWP and FGP filed this lawsuit against the Secretary of State and the sixty-seven county supervisors of elections, alleging that Section 103.121(3) violates the First and Fourteenth Amendments of the United States Constitution.

Plaintiff-appellants initially sought a temporary restraining order ("TRO") and preliminary injunction barring application of the statute against them. When the district court denied the TRO and deferred ruling on the preliminary injunction, SWP and FGP appealed, contending that the district court's denial of the TRO was tantamount to a denial of their motion for preliminary injunction. We denied plaintiff-appellants' interlocutory appeal, and SWP and FGP dismissed the appeal so the mandate would issue.

On remand, the district court certified a defendant class consisting of all sixty-seven Florida county supervisors of elections. Additionally, it certified defendant-appellee David Leahy, the Supervisor of Elections for Dade County, as the defendant class representative. The parties engaged in discovery. In the course of her deposition, Joyce testified on behalf of the Secretary of State that the Secretary of State had no authority to enforce the bonding requirements of Section 103.121(3) and that the Secretary did not intend to apply the statute. Based on this evidence, as well as the fact that, in the district court's view, the Secretary of State had not attempted to enforce the bonding requirement against SWP and FGP, the district court concluded that plaintiff-appellants had failed to demonstrate an actual "case or controversy" as required by Article III of the Constitution. Consequently, on May 24, 1996, the district court granted summary judgment in favor of defendant-appellees and against plaintiff-appellants. SWP and FGP moved for reconsideration.

While their motion was pending and less than one month after the district court ruled that no case or controversy existed, on June 20, 1996, David Rancourt,[4] Joyce's successor as Director of the Division of Elections, sent plaintiff-appellants, as well as all other political parties that had not submitted evidence of complying with the bonding requirement, a letter by certified mail that stated:

> A review of our records reflects that a copy of the $10,000 bond has not been filed with this office. This bond is required by law pursuant to section 103.121(3), Florida Statutes. *Failure to file a copy of the bond will result in removal of your minor party status with this state.*

(emphasis added). Letters identical to the June 20, 1996 letter were also sent to the Libertarian Party, the Conservative Party, the American Party, the United States Taxpayers Party of Florida, the Independence Party of Florida, the Natural Law Party of Florida, the Independent Party, and the Reform Silly Party. In response to this letter, SWP and FGP filed an Emergency Motion for Relief from Judgment and again requested a preliminary injunction. Although agents of the Secretary of State advised plaintiff-appellants in discussions that the letter had been sent in error, Rancourt did not send a letter retracting the June 20, 1996 letter to plaintiff-appellants or to any other recipients of the June 20 letter until August 26, 1996, notably only after the district court urged the Secretary of State to send such notification. The Secretary of State again denied that she had authority to enforce the bonding requirement and asserted that she did not intend to attempt to enforce it.

The district court denied the plaintiff-appellants' motions, holding that the explicitly threatened harm was not justiciable. This appeal followed.

II.

We review a district court's grant of summary judgment *de novo. Graham v. Butterworth,* 5 F.3d 496, 498 (11th Cir.1993) (citing *Key West Harbour Dev. Corp. v. City of Key West,* 987 F.2d

---

[4]As of this time, Sandra Mortham had succeeded Jim Smith as Secretary of State, and Rancourt reported to Secretary of State Mortham.

723, 726 (11th Cir.1993)), *cert. denied,* 114 S.Ct. 2136, 511 U.S. 1128, 128 L.Ed.2d 866 (1994).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The case-or-controversy constraint, in turn, imposes a dual limitation on federal courts commonly referred to as "justiciability." *United States v. Florida Azalea Specialists,* 19 F.3d 620, 621-22 (citing *Flast v. Cohen,* 392 U.S. 83, 94-95, 88 S.Ct. 1942, 1949-50, 20 L.Ed.2d 947 (1968)). Basically, justiciability doctrine seeks to prevent the federal courts from encroaching on the powers of the other branches of government and to ensure that the courts consider only those matters that are presented in an adversarial context. *Id.* Because the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in justiciability doctrine, presents an important restriction on the power of the federal courts. *See Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (quoting *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178-79 (D.C.Cir.1983) (Bork, J., concurring)). We consider the impact of this limitation on SWP and FGP's case against the Secretary of State and the sixty-seven supervisors of elections.

A.

The Secretary of State

Three strands of justiciability doctrine—standing, ripeness, and mootness—play an important role in the determination of whether the plaintiff-appellants' case against the Secretary of

State presents an Article III case or controversy. At an "irreducible constitutional minimum," standing doctrine requires a plaintiff to make the following three showings:

(1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (1) concrete and particularized, and (b) "actual or imminent, not "conjectural' or "hypothetical[;]' "

(2) there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court[;]" and

(3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife,* 504 U.S. at 560-61, 112 S.Ct. at 2136 (citing *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 41-43, 96 S.Ct. 1917, 1924, 1925-27, 48 L.Ed.2d 450 (1976)).

The ripeness inquiry asks " "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.' " *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997) (quoting *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir.1995)). In cases involving pre-enforcement challenges such as this one, we have previously noted that the lines among the justiciability doctrines tend to blur. *American Civil Liberties Union v. The Florida Bar,* 999 F.2d 1486, 1490 (11th Cir.1993) ("*ACLU* "). This case presents an example of this phenomenon, as the ripeness query merges into the injury inquiry performed in the standing analysis. Consequently, in this case we consider standing and ripeness together.

With respect to the injury requirements of both doctrines, our holding in *ACLU* controls the outcome of this case. Specifically, we have held that justiciability concerns mandate that a plaintiff in a pre-enforcement challenge demonstrate " "a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.' " *ACLU,* 999 F.2d at 1492 (citing *Babbitt v. United*

*Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308-09, 60 L.Ed.2d 895 (1979)).

We have identified three ways in which a plaintiff may meet this standard: (1) it was threatened with application of the statute; (2) application is likely; or (3) there is a credible threat of application. *See id.* at 1492 (11th Cir.1993) (citing *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2309 (citing *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971))).

In *ACLU* we considered the case of a judicial candidate who sought to make truthful remarks regarding his opponent, the incumbent circuit judge. The candidate was concerned that his statements might violate a canon of the Florida Code of Judicial Conduct as the Judicial Qualifications Commission ("JQC") of the Supreme Court of Florida had interpreted and enforced it. Thus, the candidate sought from the Committee on Standards of Conduct Governing Judges ("Committee on Standards") an advisory opinion as to whether his proposed speech would violate the canon.[5] The Committee on Standards opined that the candidate's proposed speech would violate the canon at issue. At about the same time, another judicial candidate procured an injunction against the operation of the canon in question as to that particular individual. The *ACLU* judicial candidate plaintiff then asked the JQC whether it would enforce the canon against him, but the JQC refused to render an opinion. The judicial candidate then filed suit, claiming that the canon violated his First Amendment rights. Upon receiving the lawsuit, the Florida Bar retreated, arguing that its reading of the canon in question would not prohibit the judicial candidate from making his proposed speech. While the Bar conceded that a declaratory judgment would be appropriate in view of the fact that the Committee on Standards had issued an adverse advisory opinion, it nonetheless argued that,

---

[5]The Committee on Standards was established by the Supreme Court of Florida for the sole purpose of rendering "written advisory opinions to inquiring judges concerning the propriety of contemplated judicial or non-judicial conduct." *Petition of Comm. on Standards of Conduct for Judges,* 327 So.2d 5 (Fla.1976).

under the circumstances, no preliminary injunction was necessary.

The Eleventh Circuit noted that, in the face of a mootness challenge premised on non-enforcement of an allegedly unconstitutional provision, "there must be some possibility that the defendants will seek to enforce the challenged regulation." *ACLU,* 999 F.2d at 1494 (citing *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2309). Pointing out that the Bar and the JQC continued to assert that the canon in question was constitutional, we concluded, "[W]e have no reason to think that it would not be enforced in the future against [the judicial candidate plaintiff] or other judicial candidates. This is because neither the Bar nor the JQC is bound by its court statements." *Id.* We further noted, "a change in membership could result in a change in JQC policy regarding the interpretation and enforcement of [the canon at issue]." *Id.* Based on these considerations, we determined that "a reasonable expectation exists that this wrong will be repeated."

The facts of this case are materially indistinguishable from those of *ACLU.* We therefore find, similar to our determination in *ACLU,* that the Secretary of State threatened SWP and FGP with application of the bonding requirement, and further, that a credible threat of future enforcement exists. As in *ACLU,* where the plaintiff had identified prior instances where the JQC and the Committee on Standards had attempted to enforce the canon, or had opined that enforcement was proper against individuals engaging in the *ACLU* plaintiff's proposed conduct, the record here shows that the Department of State undertook no fewer than three actions under two different Secretaries of State where it attempted to apply the bonding requirement to plaintiff-appellants. First, on April 21, 1992, Director Joyce notified plaintiff-appellants that they "must" meet the bonding requirement. Second, Secretary of State Smith issued an advisory opinion in response to plaintiff-appellants' request for a waiver that refused the waiver and stated that the Secretary had no authority to waive the bond requirements. Finally, and perhaps most significantly, on June 20, 1996, shortly after the

district court had concluded that there was no actual "case or controversy," Director Rancourt informed plaintiff-appellants that "[f]ailure to file a copy of the bond will result in removal of your minor party status with this state." Based on these actions, and particularly Rancourt's letter, there can be no doubt that the Secretary of State threatened plaintiff-appellants with application of the bonding requirement on multiple occasions stretching over some four years.

Moreover, despite the Secretaries' disavowal of their authority to enforce the bonding requirement, we find now, as we did in *ACLU,* that a credible threat of application remains. As previously noted, the Secretary of State serves as the "chief election officer of the state." Section 97.012, Fla. Stat. As such, she has responsibility for "[o]btain[ing] and maintain[ing] uniformity in the application, operation, and interpretation of the election laws." *Id.* Additionally, she holds responsibility for the "general supervision and administration of the election laws...." Section 15.13, Fla. Stat. Pursuant to this authority, as counsel for the Secretary conceded at oral argument, the Secretary has interpreted the election laws to enable her to remove a candidate or a party from the ballot under certain circumstances. Furthermore, it is the Secretary who decides in the first instance whether a group attempting to register to become a "minor political party" in the state of Florida qualifies. *See* Section 97.021(13). Thus, the Secretary of State certainly appears to have the authority to enforce the bonding requirement in precisely the manner in which Rancourt threatened.

We further note that, as in *ACLU,* where the JQC had previously attempted to apply the canon at issue to conduct similar to that of the *ACLU* plaintiff, two different Secretaries of State each originally interpreted the election laws as endowing them with the power to enforce the bonding requirement against SWP and FGP. In view of this fact, we cannot ignore the very real probability that a subsequent Secretary of State will also reach the same conclusion and again attempt to apply the bonding requirement to plaintiff-appellants. We further observe that, just like the representations

of the JQC and Committee on Standards in *ACLU* that they would not enforce the canon against the *ACLU* plaintiff, the representations of the two Secretaries of State involved in this case that they would not enforce the bonding requirement would not bind future Secretaries of State.[6] Thus, based on the two Secretaries' actions in this matter, as well as Sections 97.012 and 15.13, Fla. Stat., we assume without deciding that the Secretary of State has the power to revoke a group's minor party status if that minor party refuses to comply with the bonding requirements of Section 103.121(3), Fla. Stat.

Should a Secretary of State decide to enforce the bonding statute against a non-complying organization, plainly serious consequences, both immediate and concrete, may result. For example, only qualifying candidates of registered parties and qualifying independent candidates may appear on the ballot. *See* Section 99.096, Fla. Stat. (a "minor political party" may have the names of its candidates printed on the election ballot, provided certain conditions are met), and Section 101.191, Fla. Stat. (showing the form of the ballot, which identifies each candidate's party affiliation as "Democratic," "Republican," "(Name of Minor Party)," and "Write-in"). Thus, if a group's minor party status is revoked—if its candidates can even qualify to appear on the ballot—the ballot would not identify the candidate's party affiliation. Under the facts of this case, where Rancourt unambiguously threatened revocation of plaintiff-appellants' minor party status after the previous

---

[6]Nor, as counsel for the Secretary suggested at oral argument, would a future Secretary of State be precluded from enforcing the statute based on the district court opinion. Contrary to counsel's contention, the district court decision does not hold that the Secretary lacks the authority to enforce the bonding requirement. Rather, it proceeds from the premise that this Secretary has interpreted the statute so as to preclude her from enforcing it and does not address whether the law prevents the Secretary from enforcing the bonding requirement. In other words, in performing its analysis, the district court opinion simply accepts the Secretary's representation that she will not or cannot enforce the statute without determining whether the Secretary does, in fact, have the power to enforce the statute. Because the district court opinion does not hold that the Secretary does not have the authority to enforce Section 103.121(3), it cannot bind future Secretaries of State from applying Section 103.121(3).

Secretary of State also attempted to apply the bonding requirement to plaintiff-appellants, SWP and FGP have plainly satisfied the injury requirement.

There can also be no doubt that the required nexus between the challenged conduct and the Secretary of State exists; the threatened injury, removal of minor party status with the state of Florida, stems directly from the challenged conduct, the Secretary of State's attempted enforcement of the bonding requirement. Indeed, revocation of minor party status is the threatened penalty for failing to comply with Section 103.121(3). Moreover, plaintiff-appellants' desired relief, a finding that the statute is unconstitutional and an injunction against its enforcement, would clearly redress the threatened injury by preventing it. Accordingly, we find that SWP and FGP have standing in this case, and further, that this case is ripe.

We also decline to declare plaintiff-appellants' case against the Secretary of State moot. The burden of demonstrating mootness "is a heavy one." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632-33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). Significantly, " "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.,* does not make the case moot.' " *DeFunis v. Odegaard,* 416 U.S. 312, 318, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974) (quotation and citations omitted). Thus, the Secretary's self-imposed restriction against enforcing the bonding requirement cannot render the case moot where, as here, a realistic possibility exists that the Secretary of State will seek to enforce the challenged statute in the future. *See ACLU,* 999 F.2d at 1494 (citing *Babbitt,* 442 U.S. at 299, 99 S.Ct. at 2309). In short, our opinion in *ACLU* compels the conclusion that this case meets the justiciability requirements of Article III of the Constitution.

Because this matter satisfies all justiciability requirements, the *caveat* of the Supreme Court

in *Public Service Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), warning federal courts "to avoid imposition upon their jurisdiction through obtaining futile or premature interventions" does not apply. Nor, as the Secretary suggests, does *Graham v. Butterworth,* 5 F.3d 496 (11th Cir.1993), dictate another result. In *Graham,* a judicial candidate challenged the constitutionality of a statute that stated, "A candidate for judicial office shall not: ... (11) Agree to pay all or any part of any advertisement sponsored by any person, group, or organization wherein the candidate may be endorsed for judicial office by any such person, group or organization." *Id.* The plaintiff in *Graham* wished to engage in certain campaigning conduct that he and the defendant initially believed might be prohibited by the provision. Upon further consideration, however, the defendant concluded that the statute did not prohibit the plaintiff's proposed activities, and we concurred. Because the plaintiff's desired actions fell outside the parameters of the statute at issue in *Graham,* we found the case to be moot. In the case at hand, however, plaintiff-appellants' desired conduct, non-payment of the bonds, falls squarely within the bounds of Section 103.121(3). Indeed, it is impossible to conceive of how a party that refuses to pay the bonds required by Section 103.121(3) could possibly be in compliance with the terms of that statute. Consequently, *Graham* 's mootness holding is inapplicable to SWP and FGP's case against the Secretary of State, and, as the case pertains to the Secretary of State, we hold that it continues to present a live case or controversy.

Similarly, we find that *Johnson v. Florida High Sch. Activities Ass'n, Inc.,* 102 F.3d 1172 (11th Cir.1997) ("*Johnson* "), another case that the Secretary of State urges requires us to find this case non-justiciable, has no relevance to the case presently before us. In *Johnson,* we considered the justiciability of a matter where a high school student sought an injunction against enforcement of the Florida High School Activities Association, Inc.'s ("FHSAA") rule prohibiting students over

the age of eighteen from playing competitive sports. At the time we reviewed the matter, the plaintiff had been permitted to take part in the sports season despite his age. Additionally and notably, the sport season had concluded, and the plaintiff did not intend to participate further. We also observed that it did not appear that the FHSAA might assess any penalty against the defendant Pinellas County School Board. The plaintiff's decision not to participate any further in high school sports eliminated the possibility that the challenged conduct could once again be visited upon him, and the lack of a penalty against the School Board removed the possibility that it would be injured by the conduct at issue in that lawsuit. Not surprisingly, we concluded that no case or controversy existed in that case.

The case under review, however, is plainly distinguishable from *Johnson.* First, unlike the *Johnson* plaintiff, SWP and FGP continue to desire to engage in the activity prohibited by the statute at issue—refusing to file bonds. Second, in contrast to the Pinellas County School Board's situation in *Johnson,* SWP and FGP continue to face the very real prospect of a serious penalty, removal of minor party status. Accordingly, *Johnson* does not alter our analysis of the case at hand.

B.

Supervisors of Elections

In a suit such as this one, where the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue. *Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir.1979); *see also ACLU,* 999 F.2d at 1490. We have reviewed Florida's election laws to determine by what, if any, authority the sixty-seven county supervisors of elections may enforce Section 103.121(3). Our search has yielded no such source of power. Nor, despite our inquiries, have the parties directed us to any authority that

purports to endow the supervisors of elections with the power to enforce Section 103.121(3). Indeed, counsel for plaintiff-appellants conceded at oral argument that the supervisors of elections have no authority to enforce Section 103.121(3). We also note that the record reflects no instances where any of the supervisors of elections attempted to enforce the bonding requirement. Finally, we are aware that David Leahy, class representative of the supervisors of elections, has stated in his affidavit that he has no intention even to attempt to enforce Section 103.121(3). Under the circumstances, the supervisors of elections cannot be proper defendants to this matter, and no "case or controversy" within the scope of Article III exists.

III.

On this record, we conclude that the district court properly granted the supervisors of elections' motion for summary judgment, but erred in entering summary judgment for the Secretary of State. In view of their apparent authority to enforce Section 103.121(3), Fla. Stat., and the pronounced efforts by two different Secretaries of State to apply the bonding requirements to plaintiff-appellants, the justiciability requirements of Article III have been satisfied. Accordingly, we AFFIRM the district court's entry of summary judgment for the supervisors of elections, REVERSE the district court's entry of summary judgment for the Secretary of State, and REMAND the case to the district court to proceed to the merits of the case against the Secretary of State, consistent with this opinion.