Timothy C. Batten, Sr., United States District Judge *1353 This case comes before the Court on Defendants' motion to dismiss for lack of subject-matter jurisdiction [36].
I. Background[1]
Plaintiff Mohammed Abdullah Tawfeeq, an Iraqi national and a lawful permanent resident ("LPR") of the United States, lives in Atlanta but regularly travels to the Middle East, often on short notice, to perform his duties as a CNN journalist. He has filed this lawsuit against various governmental agencies and employees thereof[2] claiming that two Executive Orders signed by President Donald J. Trump-Executive Order No. 13,769 (Jan. 27, 2017) (the "January EO"), and Executive Order No. 13,780 (Mar. 6, 2017) (the "March EO"), both titled "Protecting the Nation from Foreign Terrorist Entry into the United States"-violate his rights under the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the United States Constitution.
On January 27, 2017, President Trump signed the January EO, which purported to immediately suspend "entry into the United States of aliens" from several countries, including Iraq, for a period of ninety days. [33-1] at § 3(c); see also 8 U.S.C. § 1187(a)(12). This temporary suspension expressly applied to immigrants (e.g., lawful permanent residents) and non-immigrants (i.e., aliens visiting the United States temporarily) alike. [33-1] at § 3(c).
Two days later, Tawfeeq returned to Hartsfield-Jackson Atlanta International Airport after completing a three-month CNN assignment in Iraq. Upon arrival, a CBP official working at the airport told Tawfeeq that he could be denied entry based on the January EO. The border official scanned Tawfeeq's passport and green card, questioned Tawfeeq about the duration and purpose of his trip to Iraq, and then sent Tawfeeq to a secondary inspection. After a thirty-minute wait and additional questioning, border officials allowed Tawfeeq to enter the United States. Tawfeeq filed this lawsuit the next day, specifically attacking Defendants' application of the January EO to lawful permanent residents.
Legal challenges ultimately stifled the implementation of the January EO, and on March 6, 2017, the January EO was revoked and replaced by the March EO. Like its predecessor, the March EO purports to suspend the entry into the United *1354 States of foreign nationals from several countries in the Middle East and Africa, but unlike the January EO, the March EO expressly excludes LPRs from that ban.
In addition, the March EO does not include Iraq among the list of countries whose nationals are barred from entry into this country. Instead, the March EO contains two new provisions aimed at Iraqi nationals. In § 1(g), the March EO declares that "[d]ecisions about issuance of visas or granting admission to Iraqi nationals should be subjected to additional scrutiny ...." This sentiment is reiterated in § 4, which provides that any "application by an Iraqi national for a visa, admission, or other immigration benefit should be subjected to thorough review ...." The March EO does not explicitly state whether or how either of these sections should be applied to Iraqi LPRs. As a result of this uncertainty, Tawfeeq alleges that CNN has refrained from sending him on various international trips, causing damage to his job performance, reputation, and career that is ongoing as long as this uncertainty persists.
Consequently, after the issuance of the March EO, Tawfeeq filed an amended complaint that contains six causes of action. In counts one, two, and five, respectively, he asserts claims for violations of rights secured by the INA, the APA, and the due process clause. These three claims relate to both past harm (the January 29, 2017 incident at the Atlanta airport) and Tawfeeq's concern about future harm (i.e., having the March EO prospectively applied to him if he were to return to the United States from a trip abroad).
In count three, Tawfeeq seeks a declaratory judgment that the March EO does not apply to returning LPRs, and in count four he requests a writ of mandamus compelling Defendants to allow LPRs to return to the United States under the terms of the INA rather than the March EO.
Finally, count six seeks an award of Tawfeeq's attorneys' fees and costs under the Equal Access to Justice Act.
Defendants have moved to dismiss the amended complaint, arguing that claims relating to Tawfeeq's detention pursuant to the January EO are now moot and that Tawfeeq lacks standing to bring a claim challenging the March EO.
II. Tawfeeq's Claims Arising Under the January EO
As noted above, Tawfeeq's amended complaint seeks a declaratory judgment that Defendants violated his rights under the INA, the APA, and the due process clause by applying the January EO to his January 29, 2017 reentry into the United States. Defendants argue that the March EO's revocation of the January EO renders these claims moot. In response, Tawfeeq contends that Defendants' revocation of the January EO falls under the voluntary cessation exception to the mootness doctrine and that the events giving rise to his claims under the January EO are capable of repetition yet evading review.
A. Legal Standard: Mootness
"The Constitution of the United States limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." CAMP Legal Def. Fund, Inc. v. City of Atlanta , 451 F.3d 1257, 1269 (11th Cir. 2006). Article III's case-or-controversy requirement "means that the federal courts cannot exercise jurisdiction over cases where the parties lack standing, or where the issue in controversy has become moot." Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist. , 647 F.3d 1296, 1302 (11th Cir. 2011).
"By its very nature, a moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.' "
*1355 Nat'l Advert. Co. v. City of Miami , 402 F.3d 1329, 1332 (11th Cir. 2005) (quoting Coral Springs St. Sys., Inc. v. City of Sunrise , 371 F.3d 1320, 1328 (11th Cir. 2004) ). "If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion." Id.
But an exception to this rule applies when the subsequent developments at issue consist of a defendant's voluntary cessation of allegedly illegal conduct. United States v. W.T. Grant Co. , 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). " 'Because of the possibility that the defendant could merely return to his old ways, the test for mootness in cases such as this is a stringent one,' " and a case will not be deemed moot unless it is " 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " Coral Springs St. Sys. , 371 F.3d at 1328-29 (quoting Sec'y of Labor v. Burger King Corp. , 955 F.2d 681, 684 (11th Cir. 1992) (alterations adopted) ).
"[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Id. at 1329. Thus, the repeal or amendment of a challenged law generally moots a case to the extent the challenged features of the law are removed. Id. (collecting cases); Nat'l Advert. Co. , 402 F.3d at 1332 ("A change in the law, such as amending a zoning ordinance ..., or a change in other circumstances can give rise to mootness.").
But even in the context of repealed legislation, courts have declined to find mootness applicable "when the law is reasonably likely to be reenacted or when it is replaced by another constitutionally suspect law." Coral Springs St. Sys. , 371 F.3d at 1330 ; see also City of Mesquite v. Aladdin's Castle , 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (denying mootness defense in part because the defendant-city expressly stated an intention to reenact the old law that was being challenged).
B. Analysis
Applying these principles to this case, the Court is compelled to conclude that Tawfeeq's claims challenging the January EO are moot and the voluntary cessation exception is inapplicable. Initially, it must be noted that none of the Defendants in this case voluntarily ceased enforcing the January EO; instead, once the March EO was signed by the president and took effect, the January EO was revoked. The decision to revoke the January EO was not made by Defendants, and Defendants are not free, absent further action by the president, to again enforce the terms of the revoked January EO.
Tawfeeq suggests that President Trump's statement that "we ought to go back to the [January EO] and go all the way" to the Supreme Court shows a reasonable expectation that the January EO will be reinstated, [37] at 21, but the Court disagrees. Such statements, which the Court notes were made in the context of a political rally days after the March EO was signed, show at most a mere possibility that the president would consider returning to the January EO. There is no allegation that he has actually taken steps to revive the January EO in the five months since it was revoked.
Significant too is the fact that the January EO was revoked only after multiple courts enjoined its enforcement. "This is not a case where the defendant[s] escaped adjudication of the illegality of [their] actions by voluntarily ceasing its improper conduct before the court could act." Dubois v. U.S. Dep't of Agric. , 20 F.Supp.2d 263, 269 (D.N.H. 1998). "In a case such as this, ... where the potential for recurrence of the challenged conduct is *1356 largely eliminated by an enforceable court order, the justification underlying the [voluntary cessation] exception is not present" because the defendants are "not simply free to return to [their] 'old ways' " once the case is declared moot. Id. ; see also Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63 & 94 , 939 F.2d 866, 870 (9th Cir. 1991) (" '[L]egally compelled' cessation of ... conduct is not 'voluntary' for purposes of this exception to the mootness doctrine.").
In sum, while there exists the theoretical possibility that the president-a non-party to this case-could revive the January EO and in so doing effectively undo Defendants' "cessation" of the conduct Tawfeeq challenges, five months of inaction suggests that is unlikely, and the prior enforceable injunctions ensure that any attempt to reinstate the January EO would be unsuccessful. Under the circumstances present in this case, the Court cannot conclude that the harm to which Tawfeeq complains he was subjected under the terms of the January EO is reasonably likely to recur.[3] Thus, Tawfeeq's claims arising from the January 29, 2017 incident at the Atlanta airport are moot.
III. Tawfeeq's Claims Arising Under the March EO
Having concluded that Tawfeeq's claims seeking a declaration of his rights under the January EO are moot, the Court turns to Defendants' argument that Tawfeeq lacks standing to bring claims challenging the March EO.
A. Legal Standard: Standing and Injury
Standing, like mootness, is an "essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "The party invoking federal jurisdiction bears the burden of proving the essential elements of standing." DiMaio v. Democratic Nat'l Comm. , 520 F.3d 1299, 1301 (11th Cir. 2008). The Supreme Court has summarized those elements as follows:
First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Lujan , 504 U.S. at 560-61, 112 S.Ct. 2130.
With respect to injury, a plaintiff bringing a pre-enforcement challenge to a law that has not yet been applied to him must show that there is " 'a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.' " Ga. Latino Alliance for Human Rights v. Governor of Ga. , 691 F.3d 1250, 1257 (11th Cir. 2012) (internal punctuation omitted) (quoting Socialist Workers Party v. Leahy , 145 F.3d 1240, 1245 (11th Cir. 1998) ). This standard is satisfied if either *1357 (1) the plaintiff was threatened with application of the challenged law; (2) the challenged law is likely to be applied to the plaintiff; or (3) there is a "credible threat" that the law will be applied to the plaintiff. Id. at 1257-58.
"While it is unnecessary for a plaintiff to expose himself to actual arrest or prosecution to challenge a statute, [courts] will not accept as plaintiffs persons having no fears of state prosecution except those that are imaginary or speculative." Id. at 1258 (internal quotations and citations omitted). In addition, "[i]t is not enough that the plaintiff's complaint sets forth facts from which [a court] could imagine an injury sufficient to satisfy Article III's standing requirements." Elend v. Basham , 471 F.3d 1199, 1205 (11th Cir. 2006) (quotations omitted and alteration adopted).
"The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Id. (internal punctuation omitted). The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Raines v. Byrd , 521 U.S. 811, 819-20, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." CAMP Legal Def. Fund , 451 F.3d at 1269 (quotations omitted).
B. Analysis
Defendants argue that Tawfeeq's claimed injury caused by the March EO is too speculative and attenuated to give him standing to sue. Initially, the Court is not persuaded that Tawfeeq's lack of plans to travel outside the United States on any date certain is dispositive of the injury inquiry. Just as a plaintiff need not expose himself to arrest or prosecution before bringing a legal challenge to a criminal statute, Tawfeeq can bring a pre-enforcement challenge to the March EO's travel ban-even in the absence of set plans to depart the country-so long as he can show that there exists a "realistic danger of sustaining direct injury as a result of the ... operation or enforcement" of the March EO. Ga. Latino Alliance , 691 F.3d at 1257-58. Thus, the Court will examine whether this standard is satisfied with respect to the various provisions of the March EO.
1. Standing to Challenge § 2 of the March EO
The Court easily concludes that Tawfeeq lacks standing to challenge § 2 of the March EO. That provision, which temporarily suspends entry into the United States by nationals from six specified countries, does not apply to Iraqis or lawful permanent residents. There is simply no basis to believe that § 2 would in any way affect the attempted reentry into the United States of an Iraqi LPR such as Tawfeeq. Where a plaintiff has only an "imaginary or speculative" fear that a law will be enforced against him, he has no standing to bring a pre-enforcement challenge to that law. Babbitt v. United Farm Workers Nat'l Union , 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).
2. Standing to Challenge § 1(g) of the March EO
Unlike § 2 of the March EO, § 1(g) does apply to Iraqi nationals, and it does not expressly exclude lawful permanent residents from its reach. Nevertheless, the Court concludes that Tawfeeq lacks standing to challenge this provision as well.
*1358 Section 1(g) provides, in pertinent part, that "[d]ecisions about issuance of visas or granting admission to Iraqi nationals should be subjected to additional scrutiny ...." [33-2] at § 1(g). Tawfeeq has never alleged that he would require a visa to reenter the country after an international trip. He therefore has standing to challenge § 1(g) only if there is a realistic danger that he will be subjected to "additional scrutiny" in connection with seeking an "admission" into the United States.
Under the INA and other immigration laws, "admission" is a term of art, and subject to certain statutory exceptions that do not apply here, a lawful permanent resident returning to the United States "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws." 8 U.S.C. § 1101(a)(13)(C) ; see also [33] at ¶ 110 (alleging that the March EO "cannot be applied to returning residents who by law do not seek 'admission' as set forth in 8 U.S.C. § [1]101(a)(13)(C)").
Because Tawfeeq avers that § 1(g) of the March EO does not apply to him since he would not be seeking an "admission" when returning to the United States, it is tempting to hastily dismiss his fear of being detained under that provision as "imaginary or speculative." Babbitt , 442 U.S. at 298, 99 S.Ct. 2301. But the amended complaint also alleges that on January 29, 2017, Defendants erroneously processed his reentry as an "admission." [33] at ¶¶ 102-14.[4] If they were to make that mistake again while the March EO is in place, Tawfeeq could be subjected to "additional scrutiny" under § 1(g).
In other words, Tawfeeq claims standing to challenge the March EO not because it actually applies to him but instead because Defendants are likely to erroneously conclude that it applies to him. He seeks a court order essentially requiring Defendants to comply with the law. See [37] at 20 ("In essence, Plaintiff seeks this Court's assistance in ensuring that Defendants have properly understood and implemented the March EO in light of the complex legal framework here and that they have conveyed that proper implementation to their agents in the field.").
Even giving full credit to the amended complaint's allegations about the January 29, 2017 incident, Tawfeeq takes too broad a view of Article III standing. The Court cannot assume that those tasked with enforcing a law will do so in an unreasonably broad manner, even when they might have done so on one occasion in the past. Indeed, government defendants are presumed to carry out their duty to enforce the law in good faith. See, e.g., United States v. Armstrong , 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). To premise standing on conjecture that governmental agencies will apply a challenged law to individuals whose conduct the text of the law does not actually reach would eviscerate the limitations placed on federal jurisdiction by Article III.
Defendants do not dispute that returning permanent residents do not seek "admission" into the United States. There is no allegation that since January 29, 2017, Defendants have processed any LPR's reentry as an "admission," and it is only speculative that they will do so in the future. Moreover, unlike the January EO, which made no special mention of permanent residents, the most restrictive part of the March EO-§ 2, which suspends outright *1359 entry into the United States by nationals from six countries-carves out an exception for LPRs. It is unlikely that Defendants would apply the March EO in a manner that would disallow the entry of LPRs from Iraq-a country whose nationals can enter the United States-while simultaneously allowing the entry of LPRs from countries whose nationals cannot enter.
Under these circumstances, the Court cannot conclude that there is anything more than a "remote possibility" that Tawfeeq will suffer a future injury by operation of § 1(g) of the March EO, and he therefore lacks standing to challenge that provision. Malowney v. Fed. Collection Deposit Grp. , 193 F.3d 1342, 1347 (11th Cir. 1999).
C. Standing to Challenge § 4 of the March EO
Finally, the Court turns to § 4 of the March EO, which provides that "[a]n application by any Iraqi national for a visa, admission, or other immigration benefit should be subjected to thorough review ...." [33-2] at § 4. Although § 4 is similar to § 1(g) in that both apply to applications by Iraqis for visas or admission, § 4 reaches something that § 1(g) does not: "[a]n application by any Iraqi national for ... other immigration benefit[s]."
The Court has already rejected Tawfeeq's concern that he might be deemed to be seeking "admission" as too speculative to give rise to an Article III injury. Unlike "admission," however, "other immigration benefits" is not defined in the March EO or in the INA or other immigration laws. "Surely," Tawfeeq suggests, "an LPR who seeks to return to the United States under INA § 101(a)(13)(C) seeks to benefit from that provision and thus comes within a plausible reading of the March EO, even if he does not as a legal matter seek 'admission.' " [37] at 18. The Court disagrees.
While there is no precise definition of "immigration benefits," neither of the two examples that can be gleaned from context-visas and admissions-applies to lawful permanent residents. The amended complaint does not allege that a returning LPR would be seeking an "immigration benefit" or that Defendants have relied on this language to detain returning LPRs. Although Tawfeeq fears that Defendants might detain him based on their determination that he seeks an "immigration benefit" when returning from abroad, there are no factual averments in the amended complaint suggesting that such a fear is anything other than speculative. The Court cannot conclude that there is a realistic danger that Defendants will apply the "other immigration benefit" language of § 4 to any future reentry by Tawfeeq, and as a result Tawfeeq lacks standing to challenge § 4 of the March EO.
The revocation of the January EO renders moot Tawfeeq's claims challenging its application to lawful permanent residents. Section 2 of the March EO does not apply to Iraqis or LPRs, and the facts alleged in the amended complaint do not support a finding that Tawfeeq is likely to be adversely affected by either § 1(g) or § 4 of the March EO. Accordingly, he lacks standing and is not an appropriate plaintiff to challenge the March EO.
IV. Conclusion
For the foregoing reasons, Defendants' motion to dismiss [36] is granted, non-party Victor Williams's motion for leave to file an amicus curiae brief [26] is denied as moot, and the Clerk is directed to close the case.
IT IS SO ORDERED this 11th day of August, 2017.

Because Defendants' motion raises a facial challenge to Tawfeeq's amended complaint [33], the Court's factual recitation is derived from the averments therein, which are presumed to be true. McElmurray v. Consol. Gov't of Augusta-Richmond Cty. , 501 F.3d 1244, 1251 (11th Cir. 2007).

Tawfeeq originally named nine Defendants: the Department of Homeland Security ("DHS"); then-Acting Secretary of DHS John F. Kelly; U.S. Customs and Border Protection ("CBP"), an agency under DHS; CBP Acting Commissioner Kevin McAleenan; three CBP employees; the Department of State; and then-Acting Secretary of State Thomas A. Shannon, Jr. Since the filing of this lawsuit on January 30, 2017, Rex W. Tillerson has been appointed Secretary of State and Elaine C. Duke has replaced Kelly as Acting Secretary of DHS. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Tillerson and Duke have been automatically substituted as parties to this action in place of Shannon and Kelly, respectively.

For this reason, the Court finds the exception for issues "capable of repetition yet evading review" equally inapplicable. See Dow Jones & Co. v. Kaye , 256 F.3d 1251, 1256 (11th Cir. 2001) (describing this exception as "narrow" and applicable only where, among other things, "there is a reasonable expectation that the same complaining party will be subject to the same action again").

The Court has already concluded that any legal claims arising from the January 29 incident are moot, but the Court will still consider the allegations about Defendants' conduct vis-à-vis the January EO insofar as those allegations are relevant to his claims relating to the March EO.